**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone:   (619) 798-2006
Facsimile:    (480) 247-4553

***Counsel for Plaintiff and the Proposed Class***

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| JOHN SANDOVAL, on behalf of himself and all others similarly situated,<br><br>                    Plaintiff,<br><br>      v.<br><br>PHARMACARE US, INC.,<br><br>                    Defendant. | Case No: 3:15-cv-00738-H-JLB<br>Pleading Type: Class Action<br><br>FIRST AMENDED COMPLAINT FOR VIOLATIONS OF:<br><br>CAL. BUS. & PROF. CODE §§17200 *et seq*.;<br><br>CAL. BUS. & PROF. CODE §§17500 *et seq*.;<br><br>CAL. CIV. CODE §§ 1750 *et seq*.;<br><br>BREACH OF EXPRESS WARRANTIES;<br><br>BREACH OF IMPLIED WARRANTIES; and<br><br>15 U.S.C. §§ 2301, *et seq*.<br><br>Demand for Jury Trial |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.     JURISDICTION AND VENUE ............................................................................. 1

II.    NATURE OF THE ACTION ............................................................................... 1

III.   PARTIES ........................................................................................................... 2

IV.   FACTUAL ALLEGATIONS ............................................................................. 3

      A.    The Composition of IntenseX ........................................................... 4

      B.    Specific Misrepresentations and Deceptive Acts ............................. 6

      C.    IntenseX is a Misbranded Drug ........................................................ 8

V.     RELIANCE AND INJURY ............................................................................... 11

VI.   CLASS ACTION ALLEGATIONS ................................................................. 13

VII.  CAUSES OF ACTION ...................................................................................... 14

      FIRST CAUSE OF ACTION .................................................................... 14

      SECOND CAUSE OF ACTION ............................................................... 16

      THIRD CAUSE OF ACTION ................................................................... 17

      FOURTH CAUSE OF ACTION ............................................................... 17

      FIFTH CAUSE OF ACTION .................................................................... 19

      SIXTH CAUSE OF ACTION ................................................................... 19

      SEVENTH CAUSE OF ACTION ............................................................. 20

VIII. PRAYER FOR RELIEF ................................................................................... 21

IX.   JURY DEMAND .............................................................................................. 22

i

Plaintiff John Sandoval, on behalf of himself, all others similarly situated, and the general public, by and through undersigned counsel, hereby sues Defendant PharmaCare US, Inc. ("PharmaCare" or "Defendant"), and upon information and belief and investigation of counsel, alleges as follows:

## I.   JURISDICTION AND VENUE

1.   This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)(2) (The Class Action Fairness Act) because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and because more than two-thirds of the members of the Class defined herein reside in states other than the state in which Defendant resides.

2.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant conducts business in this District, has an office in this District, and a related case is currently pending in this District. *See Kanfer v. PharmaCare US, Inc.*, No. 3:15-cv-00120-H-JLB (S.D. Cal.).

3.   Additionally, Defendant's subsidiary, Real Health Laboratories, is located in San Diego, California and is responsible for the sale and marketing of IntenseX.

## II.   NATURE OF THE ACTION

4.   Defendant sells an over-the-counter pill called "IntenseX" (the "Product").

5.   Defendant claims IntenseX has aphrodisiac properties that increase "Sexual Power and Performance."

6.   None of the ingredients in the Product, individually or in combination, provide such benefits.

7.   Plaintiff John Sandoval read, believed, and relied upon Defendant's claims when purchasing the Product during the Class Period, defined herein, and was damaged as a result.

8.   Plaintiff brings this action challenging Defendant's claims relating to IntenseX on behalf of himself and all others similarly situated under California's Unfair Competition Law, False Advertising Law, and Consumer Legal Remedies Act,

1

California's express and implied warranty provisions and Magnuson Moss Warranty Act.

9.     Plaintiff seeks in equity an order compelling PharmaCare US, Inc. to (1) cease marketing IntenseX using the misleading tactics complained of herein, (2) conduct a corrective advertising campaign, (3) restore the amounts by which Defendant has been unjustly enriched, and to (4) destroy all misleading and deceptive materials.

10.    Plaintiff further seeks actual and punitive damages, pre- and post-judgment interest, attorneys' fees, and costs.

## III.   PARTIES

11.    Defendant PharmaCare US, Inc. is a Delaware corporation with its principal place of business located at 101 Montgomery Street, Suite 2050, San Francisco, California 9410.

12.    PharmaCare US, Inc. also operates out of a San Diego office, and promotes IntenseX using in-person marketing at San Diego events such as StreetScene music festival.

13.    Defendant is registered to do business in California as entity number C3217079.

14.    Defendant PharmaCare US, Inc. is a manufacturer, distributor, and marketer of a variety of natural health products and supplements.

15.    Defendant markets its products under a variety of brand names, including "Sambucol," "Skin Doctors," and "Real Health Laboratories."

16.    IntenseX is sold and marketed under Defendant's "Real Health Laboratories" brand.

17.    In the "Contact us" sections of the PharmaCare US, Inc. website, the Real Health Laboratories website, and the IntenseX website, Defendant's contact address is listed as PO Box 122950 San Diego, California 92112-2950.

18.    In addition, the contact phone number has a San Diego area code— (858) 997-1156.

*Sandoval. v PharmaCare US, Inc.*, Case No. 15-cv-00738-H-JLB
FIRST AMENDED COMPLAINT

19.     Plaintiff John Sandoval is a resident of California who repeatedly purchased the Product for personal and household consumption.

### IV.     FACTUAL ALLEGATIONS

20.     Defendant has distributed, marketed, and sold IntenseX on a nationwide basis, both online and at retail store locations.

21.     IntenseX is available in a bottle of 20 tablets and retails for approximately $9.99.

22.     Defendant prominently labels its product under the name "IntenseX" implying that the Product's ingredients will enable "intense sex" despite that the Product is not effective as an aphrodisiac.



23.     Defendant further claims that IntenseX increases "Sexual Power and Performance," and that "IntenseX is designed to intensify your endurance, stamina and sexual performance."

24.     The Product's label further states that the "fast acting formula quickly dissolves in the body releasing an energy packed blend of potent herbal extracts" and that with the Product a user can "[a]chieve peak performance to maximize the experience when you want it most."

3

25.     Additionally, the label claims that the Product is "laboratory quality tested," contains a "proprietary stamina blend," and is "produced using the highest manufacturing standards."

26.     These labeling claims are false and misleading for the reasons described herein.

**A.      The Composition of IntenseX**

27.     IntenseX consists of a blend of small amounts of extracts from herbs, roots, and other organic substances, some of which are purported to have an effect on the human body.

28.     The figure below shows the ingredients in IntenseX:



29.     IntenseX, by means of its ingredients, claims to increase "Sexual Power & Performance" and suggests to consumers that it is effective as an aphrodisiac drug product.

30.     This, however, is false and misleading because none of the ingredients in IntenseX, individually or in combination, increase male strength and performance or are effective as an aphrodisiac.

4

31.     Some of the ingredients in IntenseX include Catuaba, Avena Sativa, Muira Puama, and Tribulus Terrestris.

32.     New York University's Langone Medical Center was found "there is as yet no real evidence" that herbs "offer any benefits" for increasing sexual performance or desire.

33.     Moreover, the Langone Medical Center has noted that there are no reliable scientific studies to establish that Ginkgo Biloba— another ingredient in IntenseX— improves sexual function.

34.     In fact, at least two studies have shown that "ginko failed to improve sexual function to any greater extent than placebo."

35.     Ginkgo Biloba has been proven to be ineffective in improving sexual function.[1]

36.     "[E]vidence supporting a role for muira puama in sexual health is very limited," and "its wide-spread use in supplements for sexual health is not supported."[2]

37.     "Not only has an effect of tribulus [terresteris] on human sexual response not been well-documented, but guidelines and dosages are not clear." Therefore, "the reason for [its] inclusion [in supplements purporting to provide sexual benefits] is, at this time, not strongly supported on the basis of scientific evidence."[3]

38.     Avena Sativa does not improve human sexual function.

39.     Guarana does not improve human sexual function.

40.     Ginger does not improve human sexual function.

---

[1] Kang, B. et al. *A placebo-controlled double blind trial of Ginkgo Biloba for anti-depressant induce sexual dysfunction.* 17 Human Physcopharmacology: Clinical and Experimental 279-284 (2002).

[2] Rowland, D. et al. *Plant-Derivatives and Herbs Used for the Promotion of Sexual Health and the Treatment of Sexual Problems.* 18 Annual Review of Sex Research 225-257 (2007).

[3] *Id.*

*Sandoval. v PharmaCare US, Inc.*, Case No. 15-cv-00738-H-JLB
FIRST AMENDED COMPLAINT

41.     Nutmeg does not improve human sexual function.

42.     Cinnamon does not improve human sexual function.

43.     Cayenne does not improve human sexual function.

44.     While a few unreplicated scientific studies suggest ingredients in the Product may, in necessary amounts, have benefits to individuals suffering certain specific conditions, many of the ingredients in the Product appear to have never been studied at all or have not otherwise been shown to have any effect on the human body, much less to increase sexual power and performance.

45.     Further, consuming random herbs and herbal extracts presents a risk of an allergic or other adverse reaction without any offsetting benefit.

**B.      Specific Misrepresentations and Deceptive Acts**

46.     **Misleading supplement name:** Defendant prominently labels their product under the name "IntenseX," falsely implying it is an aphrodisiac. The Product's name is phonetically identical to the phrase "intense sex."

47.     **Misleading heading:** Displayed at the top of the Product's front label are the words "Fast Acting!" which misleadingly implies purchasers will receive a benefit quickly, however, the Product provides no benefit, sexual or otherwise, quickly or slowly.

48.     **Misleading sub-heading:** The front of the Product's label features the misleading sub-heading "Sexual Power & Performance" despite that the Product fails to improve human sexual power and there is no evidence is contributes to human sexual performance.

49.     **Misleading claim:** The labeling of the Product claims "IntenseX is designed to intensify your endurance, stamina, and sexual performance" despite that the Product fails to intensify or enhance endurance, stamina or sexual performance.

50.     **Misleading claim:** The labeling of the Product claims "This fast acting formula quickly dissolves in the body releasing an energy packed blend of potent herbal extracts" suggesting that the Product provides a benefit quickly, however, it fails to

6

provide any benefit.

51. **Misleading claim:** The labeling of the Product states "Achieve peak performance to maximize the experience when you want it most" suggesting the Product will improve your sexual performance or experience despite having no effect on human sexual performance or experience.

52. **Misleading claim:** The labeling of the Product claims it is "Laboratory Quality Tested." This statement implies that the Product has passed and met laboratory tests and standards that support its claims. This claim is false. Defendant never conducted proper controlled studies on the effectiveness of IntenseX.

53. **Misleading claim:** The labeling of the Product claims it is a "Proprietary Stamina Blend." This statement implies that the ingredients which constitute the Product have been chosen based on scientific research in order to increase stamina. In fact, none of the ingredients in the Product, individually or in combination, increases stamina.

54. **Misleading claim:** The labeling of the Product claims it is "Produced using the highest manufacturing standards." This statement implies that the Product met standards that support its claims, when in fact the Product does not work as advertised.

55. **Misleading claim:** The labeling of the Product contains directions for "Recommended Use" that states "recommended use is one to two tablets 30-60 minutes before benefit is desired." This statement implies that the Product is efficacious and provides real benefits within a specific amount of time. The Product, however, does not provide any benefit, nor does it do so within the specified time period.

56. **Misleading claim:** Defendant provides the following claim for its "Asian Ginseng" ingredient: "Use if you suffer from coldness, rheumatism, colds and flu, frigidity and impotence." Ginseng's effect on sex, however, has been extensively studied, and it has been proved to have no effect in improving sexual ability or remedying "frigidity and impotence."

57. **Misleading claim:** With regard to Tribulus terrestiris, misspelled on its website as "Tribulus terestris," Defendant claims, "Empirical evidence suggests that

7

tribulus may help impotence in men and diminished libido in both sexes." In fact, this is false—no such evidence exists. While the herb has been studied, scientists concluded it was not effective.

**C.    IntenseX is a Misbranded Drug**

58.    The labeling described above, including but not limited to "IntenseX," "Sexual Power & Performance," and "IntenseX is designed to intensify your endurance, stamina, and sexual performance" alone and in context with other labeling claims and packaging graphics, show the Product is a purported aphrodisiac.

59.    Pursuant to Title 21 of the Code of Federal Regulations, Part 310.528 (21 C.F.R. § 310.528) any OTC drug product that is labeled, represented, or promoted for use as an aphrodisiac, like IntenseX, is regarded as a "new drug" within the meaning of section 201(p) of the FDCA (located at 21 U.S.C. § 355(p)).

60.    The FDCA requires any new drug to have an application approved by the Food and Drug Administration ("FDA") before the drug can be marketed to the public, and further that the drug's label be approved by the FDA prior to marketing or selling the drug to the public. *See*, *generally*, *id.*; 21 U.S.C. §§ 355(a), (b) [New Drug Application], (j) [Abbreviated New Drug Application, for generic drugs].

61.    Defendant's Product violates Section 505(a) of the FDCA since the adequacy of the labeled directions for its "aphrodisiac" uses has not been approved by the FDA prior to the Product being marketed to the public (*see* 21 U.S.C. § 355(a)).[4] Accordingly, the Product is misbranded under section 502(f)(1) of the FDCA (located at 21 U.S.C. § 352).

62.    Further, IntenseX includes Ginseng, Muira Puma, and Catuaba. The FDA has specifically found these are not safe and effective for OTC use as an aphrodisiac. 21 C.F.R. § 310.528. The FDA bars these label claims, which are false, misleading, and

---

[4] In addition to proving effectiveness, the manufacturer of a new drug must also prove the drug's safety, sufficient to meet FDA standards. 21 U.S.C. § 355(d).

1    unsupported by scientific data. *Id.* Thus, based on the evidence currently available, any
2    OTC drug products containing ingredients for use as an aphrodisiac, including IntenseX,
3    cannot be generally recognized as safe and effective, but instead are misbranded new
4    drugs. *See id.*

5        63.    Although Defendant labels its IntenseX product as a dietary supplement, the
6    Product is really a misbranded aphrodisiac drug product. Specifically, federal regulations
7    prohibit Defendant from making "disease claims" on dietary supplements. *See* 21 C.F.R.
8    § 101.93. Disease claims are generally described as statements which claim to diagnose,
9    mitigate, treat, cure or prevent disease where the statements claim "explicitly or
10   implicitly, that the product . . . has an effect on the characteristic signs or symptoms of a
11   specific disease or class of diseases, using scientific or lay terminology." *Id.* The labeling
12   of IntenseX leads reasonably prudent consumers into believing that the product can treat
13   premature ejaculation, erectile dysfunction, and diminished libido, which are diseases
14   recognized by the FDA.

15       64.    In addition, Defendant violates 21 U.S.C. 343(r)(6), which requires, among
16   other things, that all structure function claims are truthful and not misleading, based on
17   competent scientific evidence, and prominently provide a specified disclaimer explaining
18   that the FDA has not evaluated the structure function claim. *See also* Cal. Health &
19   Safety Code § 110670 (incorporating requirements of 21 U.S.C. § 343(r)(6)).

20       65.    California Health and Safety Code, Division 104, Part 5, contains the
21   Sherman, Food, Drug, and Cosmetic Law ("Sherman Law"). Cal. Health & Safety Code
22   §§ 109875-111915. The Sherman Law imposes identical requirements to the federal
23   FDCA: "All nonprescription drug regulations and regulations for new drug applications
24   under the FDCA are the regulations of this State." Cal. Health & Safety Code §§ 110110-
25   110111, 110115. The Sherman Law also defines a "drug" as "any article other than food,
26   that is used or intended to affect the structure or any function of the body of human
27   beings or any other animal." Cal. Health & Safety Code § 109925(c).

28       66.    In effect, the Sherman Law requires that Federal Law is followed, and where

it is not, such a violation of Federal law also violates the Sherman Law.

67.    The Sherman Law is explicitly authorized by the FDCA because it imposes identical requirements. 21 U.S.C. § 343-1.

68.    IntenseX's packaging refers consumers to the Product's website.[5]

69.    Misleading   representations   on   the   Product's   website[6]   render   it   an unapproved aphrodisiac drug within the meaning of 21 C.F.R. § 310.528.




70.    Specifically, Defendant's website claims the Product "    WORKS        SO FAST YOU MAY NOT MAKE IT HOME" and that its "FAST ACTING FORMULA" "is the only formula that works within minutes giving you the powerful energy you need to make a 'long lasting' impression." Additionally, the website claims "IntenseX was formulated   to   rev   up   your   sex   drive   and   enhance   stamina,   endurance,   and   most

---

[5] www.intenseX.com

[6] http://www.intenseX.com/

*Sandoval. v PharmaCare US, Inc.*, Case No. 15-cv-00738-H-JLB
FIRST AMENDED COMPLAINT

1   importantly, heighten and complete your sexual experience."

2   71.   IntenseX's marketing images, *supra*, further show IntenseX is marketed and
3   intended to be used as an aphrodisiac.

4   72.   These claims, alone, and even more so in combination with each other, and
5   more still in combination with the label claims, unlawfully represent that IntenseX is an
6   aphrodisiac.

7   73.   Because IntenseX has not been approved as a new drug, it is an unlawful and
8   misbranded unapproved aphrodisiac drug under 21 C.F.R. § 310.528.

9   74.   Plaintiff and members of the Class would not have purchased IntenseX if it
10  were known to them that the Product is misbranded pursuant to California's Sherman
11  Law and FDA regulations.

12                    **V.   RELIANCE AND INJURY**

13  75.   Mr. Sandoval purchased IntenseX approximately fourteen months ago in
14  Costa Mesa, California for $9.99.

15  76.   When purchasing IntenseX, Mr. Sandoval and the Class were seeking a
16  product that had the aphrodisiac qualities promised on the Product's label, namely, a high
17  quality and effective aphrodisiac that enhanced male sexual power and performance.

18  77.   When deciding to purchase IntenseX, Plaintiff read and relied on the
19  following deceptive claims contained on the packaging of IntenseX. These statements
20  were made by Defendant directly on the packaging of IntenseX at the time Plaintiff
21  purchased IntenseX:

22      a)   the Product's name, "IntenseX"

23      b)   "Sexual Power and Performance"

24      c)   "IntenseX is designed to intensify your endurance, stamina, and sexual
25           performance"

26      d)   "This fast acting formula quickly dissolves in the body releasing an energy
27           packed blend of potent herbal extracts"

28

e)   "Achieve peak performance to maximize the experience when you want it most"

f)   "Laboratory Quality Tested"

g)   "Proprietary Stamina Blend"

h)   "Produced using the highest manufacturing standards"

78.   Based on these representations, Plaintiff believed IntenseX had powerful aphrodisiac qualities and would improve his sexual power and performance.

79.   Plaintiff believed IntenseX had the qualities he sought based on these deceptive labeling claims, but the Product was actually unsatisfactory to Plaintiff for the reasons described herein, *i.e.*, the Product did not deliver the purported benefits, there is no evidence the ingredients in IntenseX provide the claimed benefits, and the consumption of IntenseX is potentially dangerous, which is an unfair and unreasonable risk considering it provides no benefit.

80.   IntenseX costs more than similar products, in particular caffeine pills, without misleading labeling, and would have cost less absent the false and misleading statements.

81.   Plaintiff would not have been willing to purchase the Product absent its false and misleading claims. Nor would he have purchased IntenseX had he known it is misbranded under California and Federal law.

82.   For these reasons, IntenseX has no value and should not be consumed by any one.

83.   Instead of receiving a product that had actual beneficial qualities, the Product that Plaintiff and the Class received was one which does not provide the claimed benefits.

84.   Plaintiff and the Class lost money as a result of Defendant's deceptive claims and practices in that they did not receive what they paid for when purchasing IntenseX.

85.   Plaintiff and the Class altered their position to their detriment and suffered damages in an amount equal to the amount they paid for the Product.

86.   The senior officers and directors of Defendant allowed IntenseX to be sold with full knowledge or reckless disregard that the challenged claims are fraudulent, unlawful, and misleading.

## VI.   CLASS ACTION ALLEGATIONS

87.   Plaintiff brings this action, pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated (the "Class"). The Class is defined as:

> All persons in the United States (excluding officers, directors, and employees of Defendant) who purchased IntenseX primarily for personal, family, or household use, and not for resale since January 1, 2004.

88.   The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all Class members in a single action will provide substantial benefits to the parties and Court.

89.   Questions of law and fact common to Plaintiff and the Class include:

a)   whether Defendant contributed to, committed, and/or is responsible for the conduct alleged herein;

b)   whether Defendant's conduct constitutes the violations of law alleged herein;

c)   whether Defendant acted willfully, recklessly, negligently, or with gross negligence in the violations of law alleged herein; and

d)   whether Class members are entitled to compensatory, injunctive, and/or other equitable relief.

90.   Plaintiff's claims are typical of Class members' claims in that they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

91.   Absent Defendant's deceptive claims, Plaintiff and the Class members would not have purchased IntenseX.

92.    Plaintiff will fairly and adequate represent and protect the interests of the Class, has no interests incompatible with the interests of the Class, and has retained counsel competent and experienced in class action litigation.

93.    The Class is sufficiently numerous, as the Class contains at least hundreds of thousands of members who purchased IntenseX across the United States.

94.    Class treatment is superior to other options for resolution of the controversy because the relief sought for each Class member is small such that, absent representative litigation, it would be infeasible for Class members to redress the wrongs done to them.

95.    Questions of law and fact common to the Class predominate over any questions affecting only individual Class members.

96.    Defendant has acted on grounds applicable to the Class, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

97.    Class treatment is appropriate under Fed. R. Civ. P. 23(a) and both Fed. R. Civ. P. 23(b)(2) and 23(b)(3). Plaintiff does not contemplate class notice if the Class is certified under Fed. R. Civ. P. 23(b)(2), which does not require notice. Plaintiff contemplates notice via publication if the Class is certified under Fed. R. Civ. P. 23(b)(3) or if the Court determines class notice is required notwithstanding that notice is not required under Fed. R. Civ. P. 23(b)(2).

98.    Plaintiff will, if notice is required, confer with Defendant and seek to present the Court with a stipulation and proposed order on the details of a class notice plan.

## VII.   CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### California Unfair Competition Law, Unlawful Prong
### Cal. Bus. & Prof. Code §§ 17200 et seq.

99.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

100.   Cal. Bus. & Prof. Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

14

101. The business practices and omissions of Defendant as alleged herein constitute "unlawful" business acts and practices in that Defendant's conduct violates the False Advertising Law, the Consumer Legal Remedies Act, and breaches California's express and implied warranty provisions and Magnuson Moss Warranty Act.

102. Defendant's conduct is further "unlawful" because it violates the FDCA and its implementing regulations in the following ways:

a) Defendant's deceptive statements violate 21 U.S.C. §§ 343(a) and 352, which deem a food or drug (including nutritional supplements) misbranded when the label contains a statement that is "false or misleading in any particular";

b) Defendant's deceptive statements are *per se* false and misleading because the FDA has ruled there is a lack of adequate data to establish general recognition of the safety and effectiveness of any of the ingredients in IntenseX, or any other ingredient, for OTC use as an aphrodisiac; and labeling claims for aphrodisiacs for OTC use are "either false, misleading, or unsupported by scientific data." 21 C.F.R. § 310.528(a);

c) Defendant's deceptive statements violate 21 C.F.R § 310.528(b), which mandates that any OTC product that is labeled, represented, or promoted for use as an aphrodisiac, like IntenseX, is regarded as a "new drug" within the meaning of 21 U.S.C. § 355(p), but Defendant does not have new drug approval for IntenseX or its labeling, as required under the FDCA and its implementing regulations. Accordingly, Defendant's Product is misbranded under section 502(f)(1) of the FDCA;

d) Defendant violates 21 C.F.R. § 101.93 because IntenseX's labeling leads reasonable consumers to believe that the Product can treat or cure maladies including premature ejaculation, erectile dysfunction, and diminished libido;

e) Defendant's Product also violates the FDCA because, as an unapproved new drug and aphrodisiac, IntenseX is not generally recognized as safe and

15

1               effective in the absence of a new drug application as set forth in the FDCA

2               and its implementing regulations. 21 C.F.R. § 310.528(a).

3       103.   Defendant's conduct is further "unlawful" because it violates the California

4 Sherman Food, Drug, and Cosmetic Law, *see* Cal. Health & Safety Code § 109875-

5 111900, which incorporates the provisions of the FDCA. *See id.* §§ 110110-110115.

6       104.   In accordance with Bus. & Prof. Code § 17203, Plaintiff seeks an order

7 enjoining Defendant from continuing to conduct business through unlawful, unfair, and

8 fraudulent acts and practices, and to commence a corrective advertising campaign.

9       105.   Plaintiff also seeks an order for the disgorgement and restitution of all monies

10 from the sale of the Product, which were acquired through its unlawful acts of unfair

11 competition.

12                              **SECOND CAUSE OF ACTION**

13        **California Unfair Competition Law, Unfair and Fraudulent Prongs**

14                **Cal. Bus. & Prof. Code §§ 17200 *et seq*.**

15       106.  Plaintiff realleges and incorporates the allegations elsewhere in the

16 Complaint as if set forth in full herein.

17       107.   California Business and Professions Code § 17200 prohibits any "unlawful,

18 unfair or fraudulent business act or practice."

19       108.   The acts, omissions, misrepresentations, practices, and non-disclosures of

20 Defendant as alleged herein also constitute "unfair" business acts and practices under the

21 UCL in that their conduct is immoral, unethical, unscrupulous, or substantially injurious

22 to consumers, offends public policy by seeking to profit from consumers' vulnerability to

23 false or deceptive virility or aphrodisiac claims, and the utility of their conduct, if any,

24 does not outweigh the gravity of the harm to Defendant's victims.

25       109.   The acts, omissions, misrepresentations, practices, and non-disclosures of

26 Defendant as alleged herein constitute "fraudulent" business acts and practices under the

27 UCL in that Defendant's claims are false, misleading, and have a tendency to deceive the

28 Class and the general public, as detailed herein.

110.   Defendant profited from its sales of the fraudulently, falsely, and deceptively advertised Product to unwary consumers.

111.   In accordance with Cal. Bus. & Prof Code § 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unfair acts and practices and to commence a corrective advertising campaign.

112.   Plaintiff also seeks an order for the disgorgement and restitution of all monies from the sale of the Product, which were acquired through acts of unfair and fraudulent competition.

### THIRD CAUSE OF ACTION

#### California's False Advertising Law

#### Cal. Bus. & Prof. Code §§ 17500 *et seq.*

113.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

114.   In violation of California Business and Professions Code § 17500 *et seq.*, the advertisements, labeling, policies, acts, and practices described herein were designed to, and did, result in the purchase and use of IntenseX.

115.   Defendant knew and reasonably should have known that the labeling claims on the Product were untrue or misleading.

116.   Defendant profited from its sale of the falsely and deceptively advertised Product to unwary consumers.

117.   As a result, Plaintiff, the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendants were unjustly enriched.

### FOURTH CAUSE OF ACTION

#### California's Consumer Legal Remedies Act

#### Cal. Civ. Code §§ 1750, *et seq.*

118.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

119.   The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

120.   Defendant's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of Defendant's Product for personal, family, or household purposes by Plaintiff and Class members, and violated and continue to violate the following sections of the CLRA:

a)   § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

b)   § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

c)   § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

d)   § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

121.   Defendant profited from its sale of the falsely, deceptively and unlawfully advertised Product to unwary consumers.

122.   As a result, Plaintiff and the Class have suffered irreparable harm; and seek restitution and actual damages in the amount of the total retail sales price of the Product sold throughout the Class period to all Class members, punitive damages in an amount sufficient to deter and punish, injunctive relief in the form of modified advertising and a corrective advertising plan, a complete prohibition on IntenseX's sale, or the sale of any other unlawful unapproved aphrodisiac drug.

123.   Pursuant to California Civil Code § 1782, in or around February 2015, Plaintiff notified Defendant in writing by certified mail of the particular violations of § 1770 of the Act as to the Product and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act.

124.   Defendant's wrongful business practices regarding the Product constituted, and constitute, a continuing course of conduct in violation of the CLRA since Defendant is still representing that the Product has characteristics, uses, benefits, and abilities which are false and misleading, and have injured Plaintiff and the Class.

125.   As Defendant failed to implement remedial measures, Plaintiff and the Class seek injunctive relief under Civil Code § 1782(d), enjoining the above described wrongful conduct by Defendant, as well as, actual and punitive damages for their CLRA claims.

## FIFTH CAUSE OF ACTION

### Breach of Express Warranty

126.   Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained elsewhere in this Complaint, as if fully set forth herein.

127.   On the Product's label and through Defendant's marketing campaign as described above, Defendant made affirmations of fact or promises, or description of goods, which formed "part of the basis of the bargain" at the time of purchase in that Plaintiff and the Class purchased the Product in reasonable reliance on those affirmations. Cal. Com. Code § 2313(1). Those affirmations of fact or promises, or descriptions of the goods are fully described in ¶¶ 20-23, 33-42, 56 of this Complaint.

128.   Defendant breached its express warranties with Plaintiff and the Class by selling a Product which did not and cannot provide the benefits described above.

129.   As a result of Defendant's breach of their warranties, Plaintiff and the Class were damaged in the amount of the purchase price of the Product.

## SIXTH CAUSE OF ACTION

### Breach of Implied Warranty of Merchantability

130.   Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained elsewhere in this Complaint, as if fully set forth herein.

131.   Defendant, through its acts and omissions set forth herein, in the sale, marketing and promotion of the Product, made representations to Plaintiff and the Class,

19

on the Product's label, that the Product provides certain claimed benefits or properties that in essence increase "Sexual Power and Performance." Those representations are fully described in ¶¶ 20-23, 33-42, 56 of this Complaint.

132. Plaintiff and the Class bought the Product manufactured, advertised, and sold by Defendant, as described herein.

133. Defendant is a merchant with respect to the goods of this kind which were sold to Plaintiff and the Class, and there was in the sale to Plaintiff and other members of the Class an implied warranty that those goods were merchantable.

134. Defendant breached that implied warranty, however, in that the Product did and does not provide the purported benefits, as set forth in detail herein.

135. As an actual and proximate result of Defendant's conduct, Plaintiff and the Class did not receive goods as impliedly warranted by Defendant to be merchantable in that they did not conform to the promises and affirmations made on the container or label of the goods.

136. Plaintiff and Class have sustained damages as a proximate result of the foregoing breach of implied warranty in the amount of the Product's purchase price.

## SEVENTH CAUSE OF ACTION

### Violation of the Magnuson-Moss Warranty Act

### 15 U.S.C. §§ 2301, *et seq*. ("MMWA")

137. Plaintiff repeats, re-alleges, and incorporates the allegations contained in the paragraphs elsewhere in this Complaint, as if fully set forth herein.

138. Plaintiff brings this cause of action individually and on behalf of the members of the Class against Defendant.

139. Plaintiff and the Class assert all state law warranty claims arising under the laws of the State of California, as allowed under section 2310(d) of the MMWA.

140. Defendant's Product is a consumer product as defined in 15 U.S.C. § 2301(1), which costs more than $5.00.

*Sandoval. v PharmaCare US, Inc.*, Case No. 15-cv-00738-H-JLB
FIRST AMENDED COMPLAINT

141.   Plaintiff and Class members are consumers as defined in 15 U.S.C. § 2301(3).

142.   Defendant is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4), (5). In connection with the sale of the Product, Defendant issued written warranties as defined in 15 U.S.C. § 2301(6)(A), by making representations regarding the Product's efficacy. These statements are listed at ¶¶ 20-23, 33-42, 56 of this Complaint (the "Express Warranties").

143.   In fact, the Product does not conform to the Express Warranties because the Express Warranties are false and/or deceptive, whereby Defendant breached the Express Warranties made to Plaintiff and the Class.

144.   Plaintiff and Class members were injured as a direct and proximate result of Defendant's breach because they would not have purchased the Product absent the Express Warranties, which formed part of the basis of the bargain.

145.   By reason of Defendant's breach of warranties, Defendant violated the statutory rights due to Plaintiff and Class members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*, thereby damaging Plaintiff and Class members.

146.   Plaintiff and the Class seek damages, equitable relief, and attorney's fees and costs pursuant to 15 U.S.C. §§ 2310(d)(1), (2).

## VIII.   **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself, all others similarly situated, and the general public, prays for judgment against Defendant as follows:

A.   An order confirming that this class action is properly maintainable as a nationwide class action as defined above, appointing Plaintiff John Sandoval and his undersigned counsel to represent the Class, and requiring Defendant to bear the cost of class notice;

B.   An Order compelling Defendant to conduct a corrective advertising campaign;

C.   An Order requiring Defendant to disgorge all monies, revenues, and profits

21

1 | obtained by means of any wrongful act or practice;

2 D.  An Order compelling Defendant to destroy all misleading and deceptive

3 | advertising materials, labels, and unapproved new drugs;

4 E.  An Order requiring Defendant to restore all funds acquired by means of any

5 | act or practice declared by this Court to be an unlawful, unfair, or fraudulent

6 | business act or practice, untrue or misleading advertising, plus pre-and post-

7 | judgment interest thereon;

8 F.  An award of pre-judgment and post-judgment interest;

9 G.  An award of attorney fees and costs;

10 H.  Actual and punitive damages of at least $5 million;

11 I.  Such other and further relief as this Court may deem just, equitable or

12 | proper.

13

## IX.    JURY DEMAND

Plaintiff hereby demands a trial by jury for his claim for damages and punitive damages, and consents to a bench trial for his claims in equity.

DATED: June 11, 2015

Respectfully Submitted,
/s/ Gregory S. Weston
**THE WESTON FIRM**
GREGORY S. WESTON
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone:  (619) 798-2006
Facsimile:   (480) 247-4553
***Counsel for Plaintiff and the Proposed Class***

*Sandoval. v PharmaCare US, Inc.*, Case No. 15-cv-00738-H-JLB
FIRST AMENDED COMPLAINT