1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

JOHN SANDOVAL, on behalf
of himself and all others similarly
situated,

Plaintiff,

v.

PHARMACARE US, INC.,

Defendant.

CASE NO. 15-cv-0738-H-JLB

**ORDER DENYING MOTION
TO DISMISS AND STRIKE**

On June 25, 2015, Defendant PharmaCare US, Inc. filed a motion to dismiss and strike portions of Plaintiff John Sandoval's first amended complaint.  (Doc. No. 11.) Plaintiff opposed the motion on September 14, 2015.  (Doc. No. 13.)  Defendant replied on September 21, 2015.  (Doc. No. 14.)  The Court took the matter under submission on September 23, 2015, pursuant to Local Civil Rule 7.1(d)(1).  (Doc. No. 16.)  For the reasons set forth below, the Court denies Defendant's motion.

## Background

This case is a putative nationwide consumer class action regarding Defendant's over-the-counter product IntenseX.  Plaintiff filed the initial complaint on April 3, 2015.  (Doc. No. 1.)  He filed the operative first amended complaint ("FAC") on June 11, 2015.  (Doc. No. 9.)  This Court has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).  (Id. ¶ 1.)

15cv0738

1    Plaintiff seeks to litigate on behalf of all persons in the United States who bought
2    IntenseX primarily for personal, family, or household use and not for resale since
3    January 1, 2004.  (Id. ¶ 87.)  He alleges causes of action for unlawful, unfair, and
4    fraudulent business practices under California's Unfair Competition Law ("UCL"),
5    Cal. Bus. & Prof. Code § 17200 et seq.; violation of California's False Advertising
6    Law ("FAL"), Cal. Bus. & Prof. Code § 17500 et seq.; violation of California's
7    Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq.; breach of
8    express warranty; breach of the implied warranty of merchantability; and violation
9    of the federal Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 et seq.
10   (FAC ¶¶ 99–146.)

11   According to Plaintiff, the name "IntenseX" implies that the product will enable
12   intense sex.  (Id. ¶ 22.)  The label contains the following statements:  "Sexual Power
13   and Performance," "IntenseX is designed to intensify your endurance, stamina, and
14   sexual performance," "This fast acting formula quickly dissolves in the body releasing
15   an energy packed blend of potent herbal extracts," "Achieve peak performance to
16   maximize the experience when you want it most," "Laboratory Quality Tested,"
17   "Proprietary Stamina Blend," and "Produced using the highest manufacturing
18   standards."  (Id. ¶¶ 23–25, 77.)  The ingredients are calcium, guarana, muira puama,
19   catuaba, ginkgo biloba, avena sativa, cordyceps, ashwaganda, tribulus terrestris,
20   American ginseng, Korean ginseng, ginger, cinnamon, nutmeg, and cayenne.  (Id.
21   ¶ 28.)

22   The IntenseX website features pictures of amorous couples and claims the
23   product "WORKS SO FAST YOU MAY NOT MAKE IT HOME," and the "FAST
24   ACTING FORMULA . . . is the only formula that works within minutes giving you the
25   powerful energy you need to make a 'long lasting' impression."  (Id. ¶ 70.)  The
26   website asserts, regarding ginseng:  "Use if you suffer from coldness, rheumatism,
27   colds and flu, frigidity and impotence."  (Id. ¶ 56.)  The website also states that
28   "Empirical evidence suggests tribulus may help impotence in men and diminished

1    libido in both sexes." (Id. ¶ 57.)

2          Plaintiff alleges that he bought IntenseX for $9.99 about fourteen months ago

3    in California. (Id. ¶ 75.)  When deciding to buy the product, he relied on the label and

4    believed IntenseX had powerful aphrodisiac qualities that would improve his sexual

5    power and performance. (Id. ¶¶ 77–78.)  But the product did not deliver the promised

6    benefits. (Id. ¶ 79.)  Moreover, he asserts, there is no evidence that the ingredients

7    provide the claimed benefits, and consuming random herbs and extracts is potentially

8    dangerous, which is an unfair and unreasonable risk considering that the product

9    provides no benefits. (Id. ¶¶ 45, 79.)

10         Plaintiff supports his claims with several reports.  According to New York

11   University's Langone Medical Center, there is no real evidence that herbs offer any

12   benefits for increasing sexual performance or desire, and there are no reliable scientific

13   studies to establish that ginkgo biloba improves sexual function. (Id. ¶¶ 32–33.)

14   In fact, at least two studies have shown that ginkgo failed to improve sexual function

15   to any greater extent than placebo. (Id. ¶ 34.)  According to another article, ginkgo

16   biloba has been proven to be ineffective in improving sexual function. (Id. ¶ 35.)  And,

17   according to a third article, evidence supporting a role for muira puama in sexual health

18   is limited, and its widespread use in supplements for sexual health is not supported.

19   (Id. ¶ 36.)  The third article also reports that the effect of tribulus terrestris on human

20   sexual reponse has not been well documented, guidelines and dosages are not clear, and

21   the reason for its use in supplements purporting to provide sexual benefits is not

22   strongly supported on the basis of scientific evidence. (Id. ¶ 37.)  Plaintiff asserts

23   further that avena sativa, guarana, ginger, nutmeg, cinnamon, and cayenne also do not

24   support sexual function. (Id. ¶¶ 38–44.)

25         Plaintiff makes three core claims about IntenseX.  First, he claims that IntenseX

26   is misbranded because the product label and website make "disease" claims that cause

27   reasonable consumers to believe the product can treat premature ejaculation, erectile

28   dysfunction, and diminished libido. (Id. ¶ 63.)  Hence, plaintiff claims, IntenseX

15cv0738

violates FDA regulation 21 C.F.R. § 101.93, which regulates the claims manufacturers can make on supplement labels, as well as California's Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), Cal. Health & Safety Code § 109875 et seq., which incorporates the FDA's labeling regulations. (<u>Id.</u> ¶¶ 63–66, 102–03.) In turn, Plaintiff alleges that these violations are "unlawful" conduct within the meaning of the UCL. (<u>Id.</u> ¶¶ 101–03.)

Second, Plaintiff claims that IntenseX is misbranded because it is marketed for use as an aphrodisiac. (<u>Id.</u> ¶¶ 58–62, 102.) The FDA has determined that any product that is promoted for use as an aphrodisiac is a "new drug" that requires premarket approval. <u>See</u> 21 C.F.R. § 310.528(b). Because Defendant does not have new-drug approval for IntenseX, Plaintiff asserts, the product is misbranded, in violation of FDA regulations, the Sherman Law, and the unlawful prong of the UCL. (FAC ¶¶ 101–03.)

Third, Plaintiff alleges that the IntenseX labeling and advertising is false and misleading because IntenseX is incapable of delivering the aphrodisiac and sexual-health benefits it promises. (<u>Id.</u> ¶¶ 26–57.) He claims that the product is thus misbranded under the Food, Drug, and Cosmetic Act ("FDCA"), the labeling violates California false-advertising laws and the Sherman Law, and these violations are unlawful conduct under the UCL. (<u>Id.</u> ¶¶ 101–03.)

Plaintiff seeks an order compelling Defendant to conduct a corrective advertising campaign and destroy all misleading advertising materials, labels, and product; disgorgement; restitution; interest; attorney fees and costs; and actual and punitive damages. (<u>Id.</u> ¶¶ A–I.)

## **Discussion**

**A.    Request for Judicial Notice**

Defendant requests judicial notice of scans of several items: (1) reproductions of the IntenseX label; (2) the FDA's Regulations on Statements Made for Dietary Supplements Concerning the Effect of the Product on the Structure or Function of the Body, 65 Fed. Reg. 1000 (Jan. 6, 2000); and (3) three publications Plaintiff relied upon

1  and cited in the FAC.  (Doc. No. 11-2 & Exhs. A–E.)  Plaintiff does not oppose the
2  request.

3         Under Federal Rule of Evidence 201, courts can take judicial notice of facts that
4  are not subject to reasonable dispute because they are either generally known or can be
5  readily determined by reference to sources whose accuracy cannot reasonably be
6  questioned.  Courts addressing motions to dismiss product-labeling claims routinely
7  take judicial notice of images of the product packaging.  See, e.g., Lam v. General
8  Mills, Inc., 859 F. Supp. 2d 1097, 1100 (N.D. Cal. 2012) ("The Court takes judicial
9  notice of the packaging of Fruit Roll-Ups and Fruit by the Foot, examples of which
10 were filed with the Court by General Mills."); Rooney v. Cumberland Packing Corp.,
11 2012 WL 1512106, at *2 (S.D. Cal. Apr. 2012) (taking notice of reproductions of the
12 panels of two boxes of Sugar in the Raw).  Accordingly, the Court grants Defendant's
13 request for judicial notice of scans of the product packaging.

14        The contents of the Federal Register are noticeable as a matter of law.  See 44
15 U.S.C. § 1507 ("The contents of the Federal Register shall be judicially noticed . . . .");
16 Bayview Hunters Point Cmty. Advocates v. Metro. Transp. Comm'n, 366 F.3d 692,
17 702 n.5 (9th Cir. 2004) (granting request for judicial notice of a proposed rulemaking
18 published in the Federal Register).  Hence, the Court also grants Defendant's request
19 for judicial notice of the FDA publication from the Federal Register.

20        The Court will not take judicial notice of the publications Plaintiff relied on and
21 cited in the complaint, but will consider them under the doctrine of incorporation by
22 reference.  "Even if a document is not attached to a complaint, it may be incorporated
23 by reference into a complaint if the plaintiff refers extensively to the document or the
24 document forms the basis of the plaintiff's claim."  United States v. Ritchie, 342 F.3d
25 903, 908 (9th Cir. 2003).  "The defendant may offer such a document, and the district
26 court may treat such a document as part of the complaint, and thus may assume that its
27 contents are true for purposes of a motion to dismiss under Rule 12(b)(6)."  Id.
28 / / /

15cv0738

**B.    Motion to Dismiss**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint if the plaintiff has failed to state a claim upon which relief can be granted.  See Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  Generally, a complaint must satisfy only the minimal notice requirements of Federal Rule of Civil Procedure 8(a)(2) to avoid dismissal on a Rule 12(b)(6) motion.  See Porter v. Jones, 319 F.3d 483, 494 (9th Cir. 2003).  Rule 8(a)(2) requires pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The complaint "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  A complaint can be dismissed only if it "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).  When ruling on a motion to dismiss, courts consider the contents of the complaint, accepting all factual allegations as true.  See Iqbal, 556 U.S. at 678.  Courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  Id. (internal quotation marks omitted).  Courts may also consider documents incorporated into the complaint by reference and items that are proper subjects of judicial notice.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 323 (2007).

Defendant contends that all of Plaintiff's claims must be dismissed under these standards.  The Court addresses each of its arguments in turn.

**1.    Express Preemption**

Defendant contends that Plaintiff's state-law claims are all expressly preempted by the Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 et seq., as amended by the Nutrition Labeling and Education Act of 1990 ("NLEA").  (Doc. No. 11-1 at 14–15.)  The FDCA sets guidelines for when food is misbranded.  See 21 U.S.C. § 343. Subsection 343(a)(1) provides that food is misbranded if the "labeling is false or

misleading in any particular." Subsection § 343(r)(6), provides that dietary supplement labels can make so-called "structure/function" claims, but not "disease" claims. A structure/function claim is a statement that

> claims a benefit related to a classic nutrient deficiency disease and discloses the prevalence of such disease in the United States, describes the role of a nutrient or dietary ingredient intended to affect the structure or function in humans, characterizes the documented mechanism by which a nutrient or dietary ingredient acts to maintain such structure or function, or describes general well-being from consumption of a dietary nutrient or dietary ingredient.

Id. § 343(r)(6)(A). A disease claim is a representation that a product can "diagnose, mitigate, treat, cure, or prevent a specific disease or class of diseases." Id. § 343(r)(6). If a product makes a disease claim, it is subject to regulation as a drug. See 21 C.F.R. § 101.93(f).

The FDCA contains an express preemption provision that preempts state-law food-labeling requirements that are "not identical to the requirements of section 343(r)." 21 U.S.C. § 343-1(a)(5). This provision applies to supplements because supplements are deemed to be "food" for purposes of the FDCA. 21 U.S.C. § 321(ff). Under this framework, state-law claims are preempted only "where application of state laws would impose more or inconsistent burdens on manufacturers than the burdens imposed by the FDCA." Gallagher v. Bayer AG, 2015 WL 1056480, at *4 (N.D. Cal. Mar. 10, 2015). "The NLEA is clear. . . that if state law seeks to impose liability consistent with the FDCA, the law is not preempted." Salazar v. Honest Tea, Inc., 74 F. Supp. 3d 1304, 1311 (E.D. Cal. 2014).

Defendant contends that Plaintiff's state-law claims are expressly preempted because the FDA has determined that statements like the ones on the IntenseX label are acceptable structure/function claims. (Doc. No. 11-1 at 15.) Defendant relies on guidance the FDA issued with the final regulation interpreting the distinction between structure/function claims and disease claims, 21 C.F.R. § 101.93(f)–(g). The guidance explains that "'arouses or increases sexual desire and improves sexual performance' is an acceptable structure/function claim because it does not imply treatment of a

disease." 65 Fed. Reg. 1000, 1030 (Jan. 6, 2000).  But "improves performance, staying power, and sexual potency" and "builds virility and sexual potency" are disease claims because they use the term "potency," which implies treatment of impotence.  Id.

This regulation preempts Plaintiff's theory that the IntenseX label makes impermissible disease claims.  Among other things, the label promises "Sexual Power and Performance," that IntenseX is "designed to intensify your endurance, stamina, and sexual performance," and that it will enable users to "[a]chieve peak performance to maximize the experience when you want it most." (FAC ¶ 77.)  According to Plaintiff, these are disease claims because they "lead[] reasonably prudent consumers to believe that the product can treat premature ejaculation, erectile dysfunction, and diminished libido, which are diseases recognized by the FDA."  (Id. ¶ 63.)  But the statements on the label are indistinguishable from "arouses or increases sexual desire and improves sexual performance," which the FDA has determined are permissible structure/function claims.  See 65 Fed. Reg. at 1030.  Plaintiff's theory regarding the label statements is inconsistent with what the FDA requires, so it is expressly preempted.  See Gallagher, 2015 WL 1056480, at *5–6 (holding that a similar misbranding theory was expressly preempted using this analysis).

But Plaintiff also identifies statements on the IntenseX website that are disease claims.  For example, the website states:  "Empirical evidence suggests tribulus may help impotence in men and diminished libido in both sexes."  (FAC ¶ 57.)  This statement is a disease claim because it "implies treatment of impotence, a disease." 65 Fed. Reg. at 1030.  Plaintiff asserts that these statements violate 21 C.F.R. § 101.93, the Sherman Law, and the unlawful prong of the UCL.  (Id. ¶¶ 63, 65–67, 102.)  The Sherman Law incorporates FDA regulations and adopts them as the laws of California.  See Cal. Health & Safety Code § 110100(a) ("All food labeling regulations . . . adopted pursuant to the federal act . . . shall be the food labeling regulations of this state.").  Claims under the Sherman Law are not expressly preempted because the Sherman Law incorporates and parallels federal law.  See Hesano v. Iovate Health Sciences, Inc.,

1  2014 WL 197719, at *6 (S.D. Cal. Jan. 15, 2015) (holding that a Sherman Law claim
2  was not expressly preempted).

3       Plaintiff's other theories are also not expressly preempted.  His second theory is
4  that IntenseX is misbranded because it is marketed as an aphrodisiac, so that it is a
5  "new drug" that is subject to the premarket approval process.  (FAC ¶¶ 58–62.)  In
6  21 C.F.R. § 310.528, the FDA determined:  "Any product that bears labeling claims
7  that it will arouse or increase sexual desire, or that it will improve sexual performance,
8  is an aphrodisiac drug" that must be approved as a new drug before it is marketed.
9  Like Plaintiff's theory regarding the website, this theory is not expressly preempted
10 because Plaintiff alleges a violation of FDA regulations, a parallel violation of the
11 Sherman Law, and a resulting violation of the unlawful prong of the UCL.  (FAC ¶¶
12 101–03.)

13      Plaintiff's third theory is that the IntenseX label is false and misleading because
14 IntenseX does not and cannot provide the promised benefits.  Because the label is false
15 and misleading, Plaintiff asserts, it violates 21 U.S.C. § 343(a) of the FDCA and the
16 unlawful and fraudulent prongs of the UCL.  (FAC ¶¶ 102, 109.)  This theory is not
17 preempted because state false-advertising laws are consistent with the FDCA's
18 prohibition on false and misleading labeling and they are unrelated to the labeling
19 requirements of § 343(r)(6).  See Gallagher, 2015 WL 1056480, at *7 ("Not preempted
20 would be a claim that 'supports heart health' as a structure/function claim is a false and
21 misleading statement contrary to scientific studies.").  The FDA recognized this when
22 it issued the final regulations interpreting § 343(r)(6):

23        The rule is neither intended to establish whether any particular
          structure/function claim is appropriate for any specific product, nor
24        whether the claim would be permitted under other provisions of the act.
          Like the labeling of any other FDA-regulated product, the labeling of
25        dietary supplements must comply with all applicable requirements
          of the act and regulations.    For example, an otherwise acceptable
26        structure/function claim might nevertheless be false or misleading for
          other reasons, causing the product to be misbranded under [§ 343] of the
27        act.

28 65 Fed. Reg. at 1001.  Thus, Plaintiff's claims premised on the theory that the IntenseX

1   labeling is false and misleading are also not expressly preempted.

2   **2.   Implied Preemption**

3   Next, Defendant proposes that Plaintiff's claims are impliedly preempted under
4   21 U.S.C. § 337(a).  (Doc. No. 11-1 at 15–18.)  Section 337(a) provides that "all . . .
5   proceedings for the enforcement, or to restrain violations of the [FDCA] shall be by
6   and in the name of the United States."  In a case involving medical devices, the
7   Supreme Court held that § 337(a) impliedly preempted state-law fraud-on-the-FDA
8   claims.  See Buckman Co. v. Plaintiffs' Legal Comm., 531 U.S. 341 (2001).  The Court
9   reasoned that policing fraud on federal agencies was not a traditional state function, the
10  premarket approval process for medical devices was heavily regulated, and the FDA's
11  exclusive authority to enforce the regulations was a critical component of the
12  regulatory framework.  See id. at 347–49.  The Court concluded: "State-law fraud-on-
13  the-FDA claims inevitably conflict with the FDA's responsibility to police fraud
14  consistently with the Administration's judgment and objectives."  Id. at 350.

15  Defendant contends that the rule from Buckman applies here.  It relies on several
16  medical-device cases, which are inapposite, and Fraker v. KFC Corp., 2007 WL
17  1296571 (S.D. Cal. Apr. 30, 2007), which concluded that § 337(a) impliedly preempted
18  state-law food-labeling claims under Buckman.  See id. at *3–4.  The year after Fraker,
19  however, the California Supreme Court held that § 337(a) does not preempt consumer
20  food-labeling claims brought under the Sherman Law.  See In re Farm Raised Salmon
21  Cases, 42 Cal. 4th 1077, 1089–96 (2008).  It reasoned that the express-preemption
22  provisions that apply to food labeling expressly allow parallel state laws, and Congress
23  was presumably aware that most states had consumer-protection laws prohibiting unfair
24  and deceptive marketing.  See id. at 1091.  Moreover, an uncodified portion of the
25  NLEA provided that "the NLEA shall not be construed to preempt any provision of
26  State law, unless such provision is expressly preempted under section 343-1 of the
27  FDCA."  Id. (internal quotation marks omitted) (quoting Pub. L. No. 101-535, § 6(c)(1)
28  (Nov. 8, 1990)).

1  Since then, district courts have routinely rejected arguments that state-law UCL,

2  FAL, and CLRA food-labeling claims and related claims under the Sherman Law are

3  impliedly preempted under § 337(a) and <u>Buckman</u>.  <u>See</u> <u>Vassigh v. Bai Brands, LLC</u>,

4  2015 WL 4238886, at *4–5 (N.D. Cal. July 13, 2015) (collecting cases); <u>Hesano</u>, 2014

5  WL 197719, at *7 (S.D. Cal. Jan. 15, 2014) ("The FDCA . . . does not preclude states

6  from adopting their own parallel laws and adopting a different mechanism for

7  enforcing those laws."); <u>Trazo v. Nestle USA, Inc.</u>, 2013 WL 4083218, at *7 (N.D. Cal.

8  Aug. 9, 2013) ("While state law tort actions cannot be used to improperly intrude on

9  the FDA's exclusive jurisdiction, Plaintiffs here sue under state law—namely, the

10  Sherman Law, UCL, FAL, and CLRA—and so their claims are not impliedly

11  preempted.").  This Court concludes that Plaintiff's claims are not impliedly preempted.

12  **3.  Lack of Substantiation**

13  Next, Defendant proposes that Plaintiff's claims fail because he alleges only a

14  lack of substantiation.  (Doc. No. 11-1 at 18–22.)  False-advertising claims based on

15  a lack of substantiation, rather than provable falsehood, are not cognizable under the

16  California consumer-protection laws.  <u>See</u> <u>In re Clorox Consumer Litig.</u>, 894 F. Supp.

17  2d 1224, 1232 (N.D. Cal. 2012) (collecting cases).  "Challenges based on a lack of

18  substantiation are left to the Attorney General and other prosecuting authorities; private

19  plaintiffs, in contrast, have the burden of proving that advertising is <u>actually</u> false

20  or misleading." <u>Bronson</u>, 2013 WL 1629191, at *8; <u>see</u> <u>Nat'l Council Against Health</u>

21  <u>Fraud v. King Bio Pharm, Inc.</u>, 107 Cal. App. 4th 1336, 1345 (2003) ("Private

22  plaintiffs are not authorized to demand substantiation for advertising claims.").

23  Plaintiff alleges only a lack of substantiation at points.  For example, he alleges

24  that "there is as yet no real evidence" that herbs offer any benefits for increasing sexual

25  performance or desire, and there are "no reliable scientific studies" establishing that

26  ginkgo biloba improves sexual function.  (FAC ¶¶ 32–33.)  But Plaintiff also alleges

27  falsity.  For example, he alleges that several studies have shown that ginkgo biloba has

28  no effect on improving sexual function, and that avena sativa, guarana, ginger, nutmeg,

cinnamon, and cayenne also do not improve sexual function. (Id. ¶¶ 34–35, 38–43.) Further, the FDA has determined that "labeling claims for aphrodisiacs for [over-the-counter] use are either false, misleading, or unsupported by scientific data." 21 C.F.R. § 310.528(a).

Defendant argues that Plaintiff has pleaded himself out of court, since the materials he relies on refer to studies that found that ginkgo biloba and ginseng had positive effects on sexual function.[1] (Doc. No. 11-1 at 21–22 & n.11.) In the Court's view, however, whether the IntenseX labeling statements are provably false based on these studies is an issue better addressed at summary judgment, when the record is more developed. The Court declines to dismiss Plaintiff's false-advertising claims on this basis.

### 4. Plausibility

Next, Defendant contends that Plaintiffs's UCL, FAL, and CLRA claims are not plausible because no reasonable consumer could be deceived by the representations on the IntenseX label. (Doc. No. 11-1 at 22–24.) Claims under the UCL, FAL, and CLRA are governed by the "reasonable consumer" test. Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008). What a reasonable consumer would believe is rarely an appropriate subject for a motion to dismiss. See id. at 938–39. Plaintiff alleges, among other things, that the IntenseX labeling represents to consumers that the product has aphrodisiac effects, when it has none. (FAC ¶¶ 29–30.) Defendant did not explain why no reasonable consumer could be deceived by such representations. Hence, the Court declines to dismiss Plaintiff's claims on this basis.

### 5. Particularity

Next, Defendant argues that Plaintiff's UCL, FAL, and CLRA claims must be dismissed because they are insufficiently particular under Federal Rule of Civil Procedure 9(b). (Doc. No. 11-1 at 25–26.) Under Rule 9(b), a plaintiff must plead

---

[1] These materials were the subject of Defendant's unopposed request for judicial notice. (Doc. No. 11-2, Exhs. C–E.)

15cv0738

fraud with particularity. "Averments of fraud must be accompanied by the who, what, when where, and how of the misconduct charged." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003) (internal quotation marks omitted). Rule 9(b) is satisfied if the allegations of fraud are "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007). Plaintiff has alleged his claims with sufficient particularity, as evidenced by Defendant's ample and pointed defense. The Court, therefore, denies Defendant's motion to dismiss under Rule 9(b).

### 6.   Breach of Express Warranty

Defendant contends that Plaintiff's claim for breach of express warranty fails because Plaintiff has not alleged the elements of a claim. (Doc. No. 11-1 at 26–27.) To plead a claim for breach of express warranty, the plaintiff must allege the exact terms of the warranty, reasonable reliance, and that a breach of the warranty proximately caused his injury. See Williams v. Beechnut Nutrition Corp., 185 Cal. App. 3d 135, 142 (1986). "Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Cal. Com. Code § 2313(1)(b); see Viggiano v. Hansen Natural Corp., 944 F. Supp. 2d 877, 893 (C.D. Cal. 2013) ("A description of the goods at issue can create an express warranty so long as it was part of the basis of the bargain between the parties.").

Plaintiff has adequately pleaded the elements of a claim for breach of express warranty. He identifies the specific statements made on the IntenseX packaging that promised increased sexual power and performance; he alleges that he and putative class members reasonably relied on those statements; and he alleges that the product did not and cannot provide the promised effects. (FAC ¶¶ 22–26, 77, 126–28.) Defendant has not shown that this claim must be dismissed for any other reason, so its motion to dismiss this claim is denied.

15cv0738

1       **7.**    **Breach of Implied Warranty**

2       Defendant argues that Plaintiff's claim for breach of the implied warranty

3 of merchantability must be dismissed because Plaintiff does not allege that IntenseX

4 was unfit for its ordinary use. (Doc. No. 11-1 at 27–28.) The implied warranty of

5 merchantability "is breached when the goods do not conform to the promises or

6 affirmations contained on the container or label or are not fit for the ordinary purposes

7 for which the goods are used." Martinez v. Metabolife Int'l, Inc., 113 Cal. App. 4th

8 181, 189 (2003). These are two separate definitions of merchantability. See Hauter

9 v. Zogarts, 14 Cal. 3d 104, 117–18 (1975). Defendant relies on the "ordinary use"

10 definition, but Plaintiff relies on the other definition, alleging that the product "did

11 not and does not" provide the benefits promised on the label. (FAC ¶¶ 131, 134.)

12 Defendant has not shown that Plaintiff's theory fails, so the Court denies Defendant's

13 motion to dismiss it.

14       **8.**    **Magnuson-Moss Warranty Act**

15       Defendant asserts that Plaintiff's Magnuson-Moss Warranty Act ("MMWA")

16 claim fails because product descriptions are not warranties and the IntenseX labeling

17 is regulated by the FDCA, making the MMWA inapplicable. (Doc. No. 11-1 at 28–29.)

18 The MMWA regulates warranties on consumer goods. It applies to written warranties,

19 which are defined as a written affirmation that "relates to the nature of the material or

20 workmanship and affirms or promises that such material or workmanship is defect free

21 or will meet a specific level of performance over a specific period of time." 15 U.S.C.

22 § 2301(6)(A). Separately, it borrows state-law causes of action for breach of warranty

23 and makes them enforceable in federal court. See Schimmer v. Jaguar Cars, Inc., 384

24 F.3d 402, 405 (7th Cir. 2004) ("The Act also . . . allows consumers to enforce written

25 and implied warranties in federal court, borrowing state law causes of action."). When

26 the MMWA claim is premised on borrowed state-law warranty claims, MMWA claims

27 "stand or fall" with the state-law claims. Clemens v. DaimlerChrysler Corp., 534 F.3d

28 1017, 1022 & n.3 (9th Cir. 2008).

The MMWA is expressly "inapplicable to any written warranty the making or content of which is otherwise governed by Federal Law." 15 U.S.C. § 2311(d). But the next sentence provides: "If only a portion of a written warranty is so governed by Federal law, the remaining portion shall be subject to this chapter." Id. Some courts have dismissed MMWA claims in product labeling actions based on the first sentence, with little analysis and no mention of the second sentence. See, e.g., Bates v. Gen. Nutrition Centers, Inc., 897 F. Supp. 2d 1000, 1002 (C.D. Cal. 2012) ("Defendants are correct that the [MMWA] claim should be dismissed because the [FDCA] governs written warranties on the labeling of dietary supplements."). Other courts have allowed supplement labeling claims under the MMWA to proceed, with no discussion of this provision. See, e.g., Dorsey v. Rockhard Labs., LLC, 2014 WL 4678969, at *9–10 (C.D. Cal. Sept. 19, 2014) ("As to the statements 'Sexual Performance Enhancer for Men' and 'Fast & Effective,' Plaintiff has stated a plausible claim under the MMWA.").

Plaintiff borrows the state-law warranty claims, (FAC ¶ 139), which are adequately pleaded, and he asserts that the product is ineffective, contrary to the representations on the label, (id. ¶ 142). As a result, the complaint states a claim under both applications of the MMWA. Plaintiff will have to prove that the product does not work and is "defective" within the meaning of the MMWA, and Defendant is free to claim that the label made no warranty within the meaning of the MMWA. See Dorsey, 2014 WL 4678969, at *9 ( "Sexual Performance Enhancer for Men" and "Fast & Effective" were warranties for purposes of the MMWA and "not mere product descriptions"); Allen v. Hylands Inc., 2013 WL 1748408, at *5–6 (C.D. Cal. 2013) ("While a product that is 'synthetic' and 'artificial' may not be defective, a product that is ineffective is."). Whether § 2311(d) precludes Plaintiff's MMWA claim is better suited for a motion for summary judgment, when the record is more fully developed and the parties further analyze the statutory scheme under the facts of the case.

/ / /

### 9.    Claims Under the UCL

Defendant asserts that Plaintiff has failed to plead any UCL violation.  (Doc. No. 11-1 at 29–30.)   But Plaintiff's theories that the IntenseX labeling violates FDA regulations, the Sherman Law, and the unlawful prong of the UCL survive Defendant's challenges.  Plaintiff's false-advertising theory under the fraudulent prong of the UCL also survive.  Defendant contends that Plaintiff has not adequately alleged a violation of the unfair prong because he did not identify the established public policy the label violates and he has not pleaded facts to suggest that Defendant's conduct was immoral, oppressive, or substantially injurious to consumers.  (Doc. No. 11-1 at 29–30.)  But Plaintiff alleges that the IntenseX labeling "offends public policy by seeking to profit from consumers' vulnerability to false or deceptive virility or aphrodisiac claims, and the utility of [the] conduct, if any, does not outweigh the gravity of the harm." (FAC ¶ 108.)  Defendant has not shown that such allegations are insufficient to state an unfair-prong claim.

### 10.    CLRA Claim

Defendant contends that Plaintiff's CLRA claim  must be dismissed because he did not file an affidavit showing that this action was commenced in the proper county. (Doc. No. 11-1 at 18 n.9.)  The CLRA requires plaintiffs to file an affidavit with the complaint showing that the action was commenced in the correct county.  See Cal. Civ. Code § 1780(d).  The correct county is "the county in which the person against whom it is brought resides, has his or her principal place of business, or is doing business, or in the county where the transaction or any substantial portion thereof occurred." Id. If a plaintiff does not file the required affidavit, the statute directs the court to dismiss the action without prejudice.  See id.

Plaintiff argues that this requirement is procedural, so that it does not apply to CLRA claims filed in federal court.  Under the facts of this case, the Court agrees. Additionally, this appears to be the proper county, as Plaintiff alleges that Defendant conducts business in this district, has an office in this district, and the subsidiary

1   responsible for selling and marketing IntenseX is located in San Diego.  (FAC ¶¶ 2–3.)

2   **11.    Injunctive Relief**

3   Last, Defendant contends that Plaintiff does not have standing to seek injunctive

4   relief because he does not allege that he will purchase IntenseX again.  (Doc. No. 11-1

5   at 30–31.)  To establish standing, the plaintiff must show that he suffered an injury in

6   fact, the injury is "fairly traceable" to the defendant's conduct, and the injury is likely

7   to be redressed by a favorable decision.  Lujan v. Defenders of Wildlife, 504 U.S. 555,

8   560–61 (1992).  A plaintiff seeking injunctive relief must demonstrate that "he has

9   suffered or is threatened with a concrete and particularized legal harm . . . coupled with

10  a sufficient likelihood that he will again be wronged in a similar way."  Bates v. United

11  Parcel Service, Inc., 511 F.3d 974, 985 (9th Cir. 2007) (internal quotation marks

12  omitted).  Injunctive relief is a remedy, not a cause of action.  See Shell Oil Co. v.

13  Richter, 52 Cal. App. 2d 164, 168 (1942).

14  District courts are split as to whether plaintiffs in product-labeling actions have

15  standing to seek injunctive relief, since consumers who know the truth cannot claim

16  any future reliance on the purportedly misleading labeling.  See In re 5-hour ENERGY

17  Marketing & Sales Practices Litig., 2014 WL 5311272, at *10–11 (C.D. Cal. 2014).

18  Some have held that consumers have standing to seek injunctive relief because denying

19  standing would thwart the purposes of California's consumer-protection laws.  See

20  id. (collecting cases).  Others have held that consumers continue to be harmed if the

21  misrepresentations continue, since they cannot rely on the defendant's representations.

22  See id. at *11 (collecting cases).  Courts use this second approach only when the

23  plaintiff indicates a desire to purchase the product again in the future.  See id.  A third

24  group has concluded that Article III's standing requirements cannot be avoided on

25  policy grounds.  See id. (collecting cases).

26  Plaintiff has standing to pursue his claims, and Defendant does not contend

27  otherwise.  Defendant's request to shave off one remedy does not require dismissal of

28  his claims.  For now, the Court declines to dismiss Plaintiff's requests for injunctive

1  relief.

2  **C.    Motion to Strike**

3       Defendant moves to strike Plaintiff's allegations regarding punitive damages,

4  Plaintiff's proposed class definition, and the statements on the IntenseX website.

5  (Doc. No. 11-1 at 18 n.8, 31–32.)  Federal Rule of Civil Procedure 12(f) provides that

6  courts "may strike from any pleading an insufficient defense or any redundant,

7  immaterial, impertinent, or scandalous matter."  Courts ordinarily grant motions to

8  strike only when the matter to be stricken clearly has no possible bearing on the

9  litigation.  See Ollier v. Sweetwater Union High Sch. Dist., 735 F. Supp. 2d 1222,

10  1223–24 (S.D. Cal. 2010).  "Motions to strike are rarely granted in the absence of a

11  showing of prejudice to the moving party."  Id. (internal quotation marks omitted).

12       Defendant contends that Plaintiff has not properly pleaded punitive damages.

13  (Doc. No. 11-1 at 31.)  Defendant relies on California Civil Code § 3294(b), which

14  provides, for corporate punitive damages liability, that an "officer, director, or

15  managing agent of the corporation" must have consciously disregarded, authorized, or

16  ratified each act of "oppression, fraud, or malice."  See also White v. Ultramar, Inc.,

17  21 Cal. 4th 563, 572 (1999).  Plaintiff alleges that he notified Defendant by certified

18  mail of the alleged CLRA violations, based on the purportedly false and misleading

19  labeling, but Defendant did not remedy them.  (FAC ¶ 123–25.)  He also alleges that

20  Defendant's "senior officers and directors . . . allowed IntenseX to be sold with full

21  knowledge or reckless disregard that the challenged claims are fraudulent, unlawful,

22  and misleading."  (FAC ¶ 86.)  In light of these allegations, the Court declines to strike

23  Plaintiff's prayer for punitive damages at this time.  The Court also declines to strike

24  the other challenged allegations, as Defendant has not shown that the Rule 12(f)

25  standards are met.

26  / / /

27  / / /

28  / / /

15cv0738

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### Conclusion

The Court denies Defendant's motion to dismiss and strike, (Doc. No. 11). Many of the issues raised are better suited for summary judgment.  Defendant must answer no later than **October 14, 2015.**

**IT IS SO ORDERED.**

DATED:  September 30, 2015

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

15cv0738