**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
DAVID ELLIOT (270381)
*david@westonfirm.com*
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone: (619) 798-2006
Facsimile: (313) 293-7071

LAW OFFICES OF RONALD A. MARRON
RONALD A. MARRON (175650)
*ron@consumersadvocates.com*
SKYE RESENDES (278511)
*skye@consumersadvocates.com*
WILLIAM B. RICHARDS, JR. (298552)
*bill@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOHN SANDOVAL, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PHARMACARE US, INC.,<br><br>Defendant. | Case No.: 3:15-cv-00738-H-JLB<br><br>CLASS ACTION<br><br>**PLAINTIFF'S MOTION FOR LEAVE TO FILE RENEWED MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: August 29, 2016<br>Time: 10:30 a.m.<br>Dept.: 15A<br>Judge: The Honorable Marilyn L. Huff |

# NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 29, 2016, at 10:30 a.m. in Courtroom 15A or as soon thereafter as he may be heard, Plaintiff John Sandoval will, and hereby does, respectfully move the Court for an order granting him leave to file a renewed motion for class certification.

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the accompanying Declaration of David Elliot ("Elliot Decl.") and on all other pleadings and papers on file in this action, and on such oral and documentary evidence and argument as may be presented at the time of hearing.

i

*Sandoval v. PharmaCare US, Inc.,* No. 3:15-cv-738 H (JLB)
PLAINTIFF'S MOTION FOR LEAVE TO FILE RENEWED MOTION FOR CLASS CERTIFICATION

The Court did not specifically permit or prohibit the filing of a renewed motion for class certification. Plaintiff therefore, in an abundance of caution, files this separate motion for leave concurrently filed with his renewed motion.

## I. INTRODUCTION

Plaintiff John Sandoval seeks leave to file a renewed motion for class certification in light of the Court's June 10, 2016 Order Denying Motion for Class Certification and Consolidation. Doc. 56. Plaintiff believes he has cured all defects the Court identified in his original motion.

## II. CLASS CERTIFICATION ORDERS ARE INHERENTLY TENTATIVE

"An order that grants or denies class certification may be altered or amended before final judgment" Fed. R. Civ. P. 23(c)(1)(C). The U.S. Supreme Court has stated class certification orders are "inherently tentative." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 n.11 (1978). "Since a motion for class certification is a preliminary procedure, courts do not require strict adherence to the Federal Rules of Civil Procedure . . . ." *In re Conagra Foods, Inc.*, 90 F. Supp. 3d 919, 965 (C.D. Cal. 2015) (citing *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 178 (1974)). It is not uncommon for district courts to allow and grant renewed certification motions. *See, e.g., Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 107 (N.D. Cal. 2008) (courts have "broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings before the court." (quoting *Armstrong v. Davis*, 275 F.3d 849, 872 n.28 (9th Cir. 2001))).

The Court's flexibility to address class certification orders "extends even after a certification order is entered." *Para v. Bashas' Inc.*. 291 F.R.D. 360, 397-98 (D. Ariz. 2013) (quotation omitted). "For such an order, particularly before any notice is sent to members of the class, is inherently tentative." *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 160 (1982).

1

*Sandoval v. PharmaCare US, Inc.*, No. 3:15-cv-738 H (JLB)
PLAINTIFF'S MOTION FOR LEAVE TO FILE RENEWED MOTION FOR CLASS CERTIFICATION

## III. PLAINTIFF'S RENEWED MOTION WILL CURE THE DEFECTS FOUND IN THE ORIGINAL MOTION

### A. Commonality and Predominance

In its order denying Plaintiff's motion for class certification, the Court held that Plaintiff had not met Rule 23's commonality and predominance requirements because "an inference of reliance [was] not appropriate where . . . it is 'likely that many class members were not exposed to the allegedly deceptive misleading advertisements.'" Doc. 56 at 8 (quoting *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595 (9th Cir. 2012)). Further, the Court noted that "Plaintiff did not submit sufficient evidence that the representations were material to consumers, that any significant portion of consumers shared their understanding of the effects IntenseX would have, or that others similarly found the product lacking." *Id*. In support of his renewed motion, Plaintiff will submit testimony from an expert witness, Dr. George E. Belch, illustrating the materiality of the challenged claims. *See* Elliot Decl., Ex. A at 7 ("[T]he claims made for IntenseX are material and likely to influence the purchase behavior of consumers who are in the market for a sexual performance enhancement product."); *Id.* at 15 ("[I]t is my opinion that the various statements and claims made on the IntenseX packaging are designed to communicate specific benefits and create beliefs that this product can enhance sexual power and performance and would be interpreted as such by the reasonable consumer.").

The June 10, 2016 Order also stated that Plaintiff "did not present sufficient evidence that IntenseX is incapable of producing the promised effects," Doc. 56 at 9, and found that a presumption of classwide injury was therefore not merited. In his renewed motion, Plaintiff will rely on the testimony of his medical expert, Dr. David Rowland,[1] to demonstrate that IntenseX is incapable of providing any of the promised benefits.

---

[1] Dr. Rowland's rebuttal expert witness report is attached as Exhibit B to the Elliot Declaration.

2

Finally, the Court found that "the regulation Plaintiff[] rel[ies] on to argue that IntenseX in an unapproved aphrodisiac drug," [. . .]"facially applies only to 'Drug products containing active ingredients offered for over-the-counter (OTC) use as an aphrodisiac.'" Doc. 56 at 9 (quoting 21 C.F.R. § 310.528). The Court held that "[o]ver-the-counter drugs and supplements are subject to different regulatory schemes" and thus 21 C.F.R. § 310.528 "does not appear to apply to supplements." Doc. 56 at 9.  Plaintiff believes that he can demonstrate with new evidence not previously before the Court that the FDA *does consider* 21 C.F.R. § 310.528 to apply to supplements bearing aphrodisiac claims.  Plaintiff will provide the Court an example of an FDA enforcement action in which the Agency applies 21 C.F.R. § 310.528 to a nearly identical supplement.

In its Final Rule Regarding Aphrodisiac Drug Products for Over-the Counter Human Use, the FDA rejected the argument that "herbs, vitamins, minerals, amino acids, and other foods truthfully labeled with non-misleading claims should not be regulated as prescription drugs." 54 Fed. Reg. 28780, 28781 (July 7, 1989). It further stated, "when articles of food are marketed as aphrodisiacs for use in the cure, mitigation, or treatment of sexual dysfunction, they are drugs under 21 U.S.C. § 321(g)(1)(B)." *Id.*[2] Additionally, the FDA stated products whose "primary intended use is to improve sexual performance or increase sexual desire" are aphrodisiac drugs pursuant to 21 U.S.C. § 321(g)(1)(C). *Id.* at 28782. "Accordingly, products containing ingredients intended to be used as aphrodisiacs, whether or not these ingredients have food uses, and making aphrodisiac claims are clearly drugs within the meaning of 21 U.S.C. § 321(g)(1)(C)." *Id.* Under the FDA's interpretation of  FDA's own regulation, 21 C.FR. § 310.528, which is entitled to *Chevron* deference by the Court, dietary supplements making aphrodisiac claims are subject to the regulation. *See Chevron USA, Inc. v. NRDC, Inc.*, 467 U.S. 837, 844

---

[2] The FDA further noted that "[i]t is well established that the definitions of 'food' and 'drug' are not mutually exclusive. An article of 'food' that is intended for use in the treatment of disease may also be a 'drug' under 21 U.S.C. § 321(g)(1)(B)." 54 Fed. Reg. at 28781.

3

(1984).

In 2010 the FDA sent an enforcement letter to Libido Edge Labs, LLC regarding a variety of products, including its Libido Edge Capsules Natural Sexual Enhancement. Elliot Decl., Ex. C. This product was an herbal supplement similar to IntenseX whose packaging made similar claims and whose ingredients also included Muira Puama, Catuaba Bark, and Tribulus Terresteris. Elliot Decl., Exs. D-E. In its letter to Libido Edge, the FDA stated, "[A]ny OTC drug product that is labeled, represented, or promoted for use as an aphrodisiac," is "subject to 21 C.F.R. Part 310.528." Elliot Decl., Ex. C. Again, the FDA's conclusion that 21 C.F.R. § 310.528 does indeed apply to supplements is entitled to *Chevron* deference, as it is an interpretation of its own regulation. Thus, PharmaCare's product IntenseX is subject to the regulations in 21 C.F.R. § 310.528, making the sale of IntenseX "per se illegal" under the Sherman Lawas alleged. Doc. 56 at 9.

**B.     Typicality**

In denying Plaintiff's initial motion for class certification, the Court held that Plaintiff had failed to meet Rule 23's typicality requirement because "Plaintiff[] testified at [his] deposition that [he] did not suffer from the sexual-health problems that IntenseX claimed to improve." Doc. 56 at 10. Plaintiff, however, contends in his FAC that IntenseX is marketed to all consumers who hope to improve their sexual performance, not just to consumers suffering from sexual-health problems. Doc. 9 ¶¶ 29, 46, 48-49, 51, 53, 55-57. As Dr. Belch explains in his expert report, the packaging of IntenseX is "designed to convey the impression that this product can be used to improve sexual performance." Elliot Decl., Ex. A at 5; *see also id*. ("These words and statements are on the package for a reason which is to communicate to consumers reviewing the package that IntenseX is a product that can enhance sexual performance."). IntenseX is not merely marketed to consumers suffering from sexual dysfunction, but to all consumers seeking to improve their sexual performance. Plaintiff is typical of these consumers and the proposed class.

4

*Sandoval v. PharmaCare US, Inc.*, No. 3:15-cv-738 H (JLB)
PLAINTIFF'S MOTION FOR LEAVE TO FILE RENEWED MOTION FOR CLASS CERTIFICATION

The Court further noted that "Plaintiff[] also testified that [he] relied on the product label, not the alleged claims on the IntenseX website." Doc. 56 at 10. Finally, the Court noted that "Plaintiff[] made [his] purchases recently, while the claims of a substantial portion of the proposed class are likely time barred," and "decline[d] to attempt to reform the class definition." Doc. 56 at 10. Both these infirmities have been cured with a narrowed class definition. Plaintiff now limits the proposed class to consumers who purchased IntenseX from retailers and not from Defendant's website within the applicable statutes of limitations. Thus, the new proposed class would only include consumers who were exposed to the same claims as Plaintiff and who recently purchased IntenseX.

### C. Standing

With respect to the standing inquiry, the Court noted that while "Plaintiff[] assert[ed] that [he had] standing because [he] relied on the label claims, the product did not perform as promised, and [he] lost money as a result," PharmaCare "counter[ed] that some class members lack standing because they were not dissatisfied, were not harmed, or have no viable claims." Doc. 56 at 13. Defendant argued that "the proposed class include[d] consumers (1) who bought similarly named products not distributed by Defendant, (2) whose claims are time-barred, (3) who bought IntenseX because of the express label claims, received the benefits claimed, and are satisfied, (4) who bought IntenseX for reasons other than its advertising or labeling, (5) who suffered no injury because they would have paid the same for similar products, (6) who received a refund, and (7) who bought the product from Defendant's website and were never exposed to the alleged aphrodisiac/disease claims Plaintiff[] rel[ies] on." Doc. 56 at 13. The proposed class in Plaintiff's renewed motion would cure each of these potential defects.

Plaintiff's proposed class would be limited to consumers who purchased IntenseX:

1. manufactured and distributed by PharmaCare;
2. from retailers only; and
3. who made their purchases within the applicable statutes of limitations.

5

The proposed class would exclude consumers who purchased IntenseX from Defendant's website and consumers who received a refund for their purchase.[3]

Finally, as alleged factually in the FAC, no potential class members could have bought IntenseX because of the express label claims and received the benefit claimed. Doc. 9 ¶¶ 30-44. As Dr. Rowland explains in his Rebuttal Expert Report, it is medically impossible for any of the ingredients in IntenseX, either individually or in combination, to provide the claimed benefits. Elliot Decl., Ex. B at 5-13.

The Court did not reach a conclusion as to whether or not Plaintiff was required to demonstrate standing for absent class members. Doc. 56 at 13-14. However, the Court "conclude[d] that class certification [was] not proper to the extent that Plaintiff[] raise[s] claims and theories [he does] not have standing to raise, and to the extent that the class includes consumers who have no cognizable injury, including those who obtained full refunds." Doc. 56 at 14. Plaintiff's revised class definition would exclude any consumers who have no cognizable injury. Having so narrowed the class, Plaintiff may now rely on the consumer protection statutes' presumption of injury. *See Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 n.13 (9th Cir. 2011) ("California has created what amounts to a conclusive presumption that when a defendant puts out tainted bait and a person sees it and bites, the defendant has caused an injury.").

**D.    Superiority**

The Court determined that "[c]lass litigation would not be superior here because common questions do not predominate." Doc. 56 at 14. As discussed above, Plaintiff believes that he can alleviate any of the Court's concerns relating to Rule 23's predominance inquiry.

**E.    Rule 23(b)(2)**

Because the Court was skeptical of Plaintiff's arguments for class certification pursuant to Fed. R. Civ. P. 23(b)(2) in his initial motion, Plaintiff's renewed motion only

---

[3] These consumers are identifiable through Defendant's accounting records.

6

*Sandoval v. PharmaCare US, Inc.*, No. 3:15-cv-738 H (JLB)
PLAINTIFF'S MOTION FOR LEAVE TO FILE RENEWED MOTION FOR CLASS CERTIFICATION

1  seeks certification pursuant to Fed. R. Civ. P. 23(b)(3).

3  DATED: July 29, 2016 — Respectfully Submitted,

/s/ Gregory S. Weston

**THE WESTON FIRM**
GREGORY S. WESTON
DAVID ELLIOT
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone:  (619) 798-2006
Facsimile:   (313) 293-7071

**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON
SKYE RESENDES
WILLIAM B. RICHARDS, JR.
651 Arroyo Drive
San Diego, California 92103
Telephone:  (619) 696-9006
Facsimile:   (619) 564-6665

*Counsel for Plaintiff*

7

*Sandoval v. PharmaCare US, Inc.*, No. 3:15-cv-738 H (JLB)
PLAINTIFF'S MOTION FOR LEAVE TO FILE RENEWED MOTION FOR CLASS CERTIFICATION