**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
DAVID ELLIOT (270381)
*david@westonfirm.com*
1405 Morena Blvd.
Suite 201
San Diego, CA 92110
Telephone: (619) 798-2006
Facsimile: (313) 293-7071

**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (175650)
*ron@consumersadvocates.com*
SKYE RESENDES (278511)
*skye@consumersadvocates.com*
WILLIAM B. RICHARDS, JR. (298552)
*bill@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone:(619) 696-9006
Facsimile: (619) 564-6665

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN SANDOVAL, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PHARMACARE US, INC.,<br><br>Defendant. | Case No. 3:15-cv-738 H (JLB)<br><br>**PLAINTIFF JOHN SANDOVAL'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT PHARMACARE US, INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Filed Concurrently with Plaintiff's Response to Defendant's Separate Statement of Uncontroverted Material Facts, and Plaintiff's Separate Statement of Material Facts in Dispute; Evidentiary Objections; and Declaration of William B. Richards, Jr.]<br><br>Date: August 29, 2016<br>Time: 10:30 AM<br>Dept: 15A<br>Judge: Honorable Marilyn L. Huff |

## **TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................1

II.    LEGAL STANDARD .................................................................................2

III.   ARGUMENT...............................................................................................3

    A. Defendant is Not Entitled to Summary Judgment on
    Plaintiff's UCL, FAL, and CLRA Claims .........................................3

       1.   Statements Appearing on Defendant's Website (www.intensex.com)..........3

       2.   Plaintiff is Not Preempted from Basing His Claims on the Theory
           that Defendant Makes Impermissible Disease Claims ..................................7

       3.   Defendant's Representations do not Constitute Non-Actionable Puffery.....9

    B. Plaintiff is Entitled to the Remedies Sought Under His
    UCL and FAL Claims .......................................................................13

       1.   Plaintiff Has a Viable Restitution Claim ......................................13

       2.   Disgorgement is an Available Remedy .........................................17

       3.   Plaintiff Has Standing to Seek Injunctive Relief.........................18

    C. Material Facts Are in Dispute on Whether Defendant Breached
    an Express Warranty ........................................................................20

       1.   Defendant Fails to Show by "Clear Affirmative Proof" that its
           Affirmations of Fact, Promises, and Descriptions of IntenseX
           Do Not Create Express Warranties ...............................................20

       2.   Defendant's Website Statements Create Express Warranties that
           Plaintiff Need Not Have Relied On ...............................................23

       3.   Plaintiff Was "Actually Exposed" to the Express Warranties on the
           Product Packaging and also "Actually Relied" on such Statements ...........24

    D. Material Facts Are in Dispute on Plaintiff's Breach of
    Implied Warranty of Merchantability ...............................................24

    E. Material Facts Are in Dispute on Plaintiff's MMWA Claims.........................25

IV.   CONCLUSION...........................................................................................25

i

# **TABLE OF AUTHORITIES**

**Cases**

*Allen v. Hyland's Inc.*,
    300 F.R.D. 643 (C.D. Cal. 2014) ........................................................... 16, 20

*Allen v. Similasan Corp.*,
    306 F.R.D. 635 (S.D. Cal. 2015) ................................................................. 16

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ...................................................................................... 2

*Arroyo v. TP-Link USA Corp.*,
    No. 5:14-CV-04999-EJD, 2015 WL 5698752 (N.D. Cal. Sept. 29, 2015) ......... 15

*Autodesk, Inc. v. Dassault Systems Solidworks Corp.*,
    685 F. Supp. 2d 1001 (N.D. Cal. 2009) ...................................................... 10

*Barquis v. Merchants Collection Assn.*,
    7 Cal. 3d 94 (1972) .................................................................................... 14

*Bohn v. Pharmavite, LLC*,
    No. CV 11-10430-GHK CWX, 2012 WL 8898669 (C.D. Cal. May 16, 2012) ........... 18

*Burr v. Sherwin Williams Co.*,
    42 Cal.2d 682 (1954) .................................................................................. 23

*C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*,
    213 F.3d 474 (9th Cir. 2000) ....................................................................... 2

*Carmen v. S.F. Unified Sch. Dist.*,
    237 F.3d 1026 (9th Cir. 2001) ..................................................................... 3

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ..................................................................................... 2

*Chowning v. Kohl's Dep't Stores, Inc.*,
    No. CV1508673RGKSPX, 2016 WL 1072129 (C.D. Cal. Mar. 15, 2016) ......... 16

*Clemens v. DaimlerChrysler Corp.*,
    534 F.3d 1017 (9th Cir. 2008) .................................................................... 25

*Coleman v. Boston Sci. Corp.*,
    No. 1:10-CV-01968-OWW, 2011 WL 3813173 (E.D. Cal. Aug. 29, 2011) ......... 23

*Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*,
    911 F.2d 242 (9th Cir. 1990) ..................................................................... 10

ii

*County of Solano v. Vallejo Redevelopment Agency*,
    75 Cal. App. 4th 1262 (1999) ...................................................................... 15

*Cty. of San Bernardino v. Walsh*,
    158 Cal. App. 4th 533 (2007) ...................................................................... 15

*Dorsey v. Rockhard Labs*., LLC,
    2014 WL 4678969 (C.D. Cal. Sept. 19, 2014) ...................................... 10, 22

*Fed. Trade Comm'n v. U.S. Sales Corp*.,
    785 F. Supp. 737 (N.D. Ill. 1992) ............................................................... 10

*Fields v. Wise Media, LLC*,
    No. C 12-05160 WHA, 2013 WL 3187414 (N.D. Cal. June 21, 2013) ....... 15

*Fletcher v. Sec. Pac. Nat'l Bank*,
    23 Cal. 3d 442 (1979) ................................................................................. 14

*Freeman v. Arpaio*,
    125 F.3d 732 (9th Cir. 1997) ........................................................................ 2

*Freeman v. Time, Inc*.,
    68 F.3d 285 (9th Cir. 1995) .......................................................................... 5

*Greenman v. Yuba Power Prods., Inc.*,
    59 Cal.2d 57, 62–64 (1963) ........................................................................ 23

*Henderson v. Gruma Corp*.,
    No. CV 10-04173 AHM AJWX, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) ......... 18

*Hirsch v. Bank of Am.*,
    107 Cal. App. 4th 708 (2003) ...................................................................... 15

*In re Sony PS3 Other OS Litig.*,
    551 Fed. Appx. 916 (2014) .......................................................................... 25

*In re Steroid Hormone Prod. Cases*,
    181 Cal. App. 4th 145 (Ct. App. 2010) ........................................................ 9

*In re Tobacco Cases II*,
    240 Cal. App. 4th 779 (2015) ...................................................................... 16

*In re Vioxx Class Cases*,
    180 Cal. App. 4th 116 (2009) ...................................................................... 16

*Johns v. Bayer Corp*.,
    No. 09-CV-1935-AJB DHB, 2012 WL 1520030 (S.D. Cal. Apr. 30, 2012) ............... 16

iii

*Juarez v. Arcadia Fin., Ltd.*,
  152 Cal. App. 4th 889 (2007) ..................................................................... 13, 14, 18

*Karim v. Hewlett-Packard Co.*,
  311 F.R.D. 568 (2015) ............................................................................................ 24

*Keegan v. Am. Honda Motor Co., Inc.*,
  284 F.R.D. 504 (C.D. Cal. 2012) ............................................................................ 23

*Keith v. Buchanan*,
  173 Cal. App. 3d 13 (1985) ..................................................................................... 21

*Koehler v. Litehouse, Inc.*,
  No. CV 12-04055 SI, 2012 WL 6217635 (N.D. Cal. Dec. 13, 2012) ........................ 19

*Kordel v. U.S.*,
  335 U.S. 345 (1950) ................................................................................................... 8

*Korea Supply v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) .......................................................................................... 13

*Kwikset Corp. v. Super. Ct.*,
  51 Cal. 4th 310 (2011) ............................................................................................ 19

*Larsen v. Trader Joe's Co.*,
  No. C 11-05188 SI, 2012 WL 5458396 (N.D. Cal. June 14, 2012) ............................ 19

*Martinez v. Metabolife Int'l, Inc.*,
  113 Cal. App. 4th 181 (2003) .................................................................................. 25

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ................................................................................................... 3

*Miller v. Glenn Miller Prods., Inc.*,
  454 F.3d 975 (9th Cir. 2006) ..................................................................................... 2

*Newcal Indus. v. Ikon Office Solutions*,
  513 F.3d 1038 (9th Cir. 2008) ................................................................................. 10

*Ortega v. Natural Balance, Inc.*,
  300 F.R.D. 422 (C.D. Cal. 2014) ............................................................................. 17

*Paduano v. Am. Honda Motor Co. Inc.*,
  169 Cal. App. 4th 1453 (2009) .................................................................................. 7

*People v. Sarpas*,
  225 Cal. App. 4th 1539 (2014) ................................................................................ 15

iv

*Price v. Kawasaki Motors Corp., USA*,
   No. SACV 10-01074-JVS, 2011 WL 10948588 (C.D. Cal. Jan. 24, 2011) .................. 15

*Ries v. Ariz. Bevs. U.S. LLC, Hornell Brewing Co.*,
   287 F.R.D. 523 (N.D. Cal. 2012) ................................................................................. 18

*Samet v. Procter & Gamble Co.*,
   No. 5:12-CV-01891 PSG, 2013 WL 3124647 (N.D. Cal. June 18, 2013) ..................... 8

*Shersher v. Super. Ct.*,
   154 Cal. App. 4th 1491 (2007) .................................................................................. 15

*Southland Sod Farms v. Stover Seed, Co.*,
   108 F.3d 1134 (9th Cir. 2007) .................................................................................. 10

*Tompkins v. Basic Research LL*,
   No. CIV. S08244LKKDAD, 2008 WL 1808316 (E.D. Cal. Apr. 22, 2008) ............... 15

*U.S. v. Harkonen*,
   No. C 08–0164 MHP, 2009 WL 1578712 (N.D. Cal. June 4, 2009) ............................ 8

*Viggiano v. Hansen Natural Corp.*,
   944 F. Supp. 2d 877 (C.D. Cal. 2013) ....................................................................... 21

*Von Koenig v. Snapple Beverage Corp.*,
   713 F. Supp. 2d 1066 (E.D. Cal. 2010) ..................................................................... 15

*VP Racing Fuels, Inc. v. Gen. Petroleum Corp.*,
   No. 2:09CV02067-MCE-GGH, 2010 WL 1611398 (E.D. Cal. Apr. 20, 2010) ............ 15

*Weinstat v. Dentsply Int'l, Inc.*,
   180 Cal. App. 4th 1213 (2010) ............................................................................ 20, 24

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ................................................................................. 5, 10

*Windham at Carmel Mountain Ranch Assn. v. Super. Ct.*,
   109 Cal. App. 4th 1162, 1169 (2003) ........................................................................ 23

*ZL Techs., Inc. v. Gartner, Inc.*,
   No. CV 09-02393 JF (RS), 2009 WL 3706821 (N.D. Cal. Nov. 4, 2009) ................... 15

**Statutes**

21 C.F.R. § 201.128 .................................................................................9

21 U.S.C. § 321(ff).................................................................................23

21 U.S.C. § 321(m) ..................................................................................7

Cal. Com. Code § 2313(1)(a) .................................................................20

Cal. Com. Code § 2313(1)(b) .............................................................20, 21


**Rules**

CivLR 7.1(e)(1) ......................................................................................17

CivLR 7.1(f)(2) ......................................................................................17

Fed. R. Civ. P. 56 .....................................................................................2

Fed. R. Civ. P. 56(c)(B) .........................................................................25

Fed. R. Civ. P. 56(e) .................................................................................3

Fed. R. Evid. 401 ......................................................................................4

Fed. R. Evid. 402 ......................................................................................4


**Other Authorities**

Cal. Com. Code § 2313 cmt. para. 3 ......................................................21

# I.  INTRODUCTION

Plaintiff John Sandoval opposes Defendant's Motion for Summary Judgment (ECF 63 or "Motion"), and files with this Memorandum of Points and Authorities his Response to Defendant's Statement of Uncontroverted Material Facts, along with Plaintiff's Separate Statement of Material Facts in Dispute, Evidentiary Objections, and the Declaration of William B. Richards, Jr. supporting his Opposition.  The Court should deny Defendant's Motion in its entirety.

First, Defendant's Motion is essentially a rewrite of its prior motion to dismiss, but fails to meet the summary judgment standard of citation to evidence.  Indeed, Defendant does not cite a single expert report in support of any claim that the 1) IntenseX Product ("Product") worked, 2) that Defendant's advertising about the Product did not deceive Plaintiff, or that 3) Defendant did not deprive Plaintiff of his money for a completely worthless Product.  Thus, Defendant's Motion fails on this basic evidentiary level.

Second, Plaintiff has established, through evidence, material facts in dispute on all of his consumer fraud claims, including that the Product was likely to deceive a reasonable consumer for failing to be effective, and that the Product is unlawful under the Unfair Competition Law ("UCL").  Similarly, the facts are in dispute on whether IntenseX's website constitutes labeling, and the Court should not strike use of this evidence because it shows Defendant's intended use of the Product as an aphrodisiac.

Third, Plaintiff's warranty claims also survive because Plaintiff has evidence the Product does not work, that the labeling claims of sexual enhancement were material to Plaintiff, and that Plaintiff was deprived of his money for worthless, illegal pills.

In short, Defendant has failed to meet its burden of proving the lack of any material facts in dispute and the Court should deny its Motion in its entirety.

1

## II. LEGAL STANDARD

Summary judgment is appropriate on "all or any part" of a claim if there is an absence of a genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, the fact could affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. *See Celotex*, 477 U.S. at 323–24.

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. "The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial." *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006) (citing *Celotex*, 477 U.S. at 324). "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). "In contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party. The moving party need not disprove the other party's case." *Miller*, 454 F.3d at 987 (citing *Celotex*, 477 U.S. at 325).

The party opposing summary judgment must "by [his or her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting

2

Fed. R. Civ. P. 56(e)). That party cannot "rest upon the mere allegations or denials of [his or her] pleadings." Fed. R. Civ. P. 56(e). The court may "limit its review to the documents submitted for the purposes of summary judgment and those parts of the record specifically referenced therein." *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001).

When making its determination, the Court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

## III.   ARGUMENT

**A.    Defendant is Not Entitled to Summary Judgment on Plaintiff's UCL, FAL, and CLRA Claims**

### *1. Statements Appearing on Defendant's Website (www.intensex.com)*

Defendant contends that Plaintiff Sandoval cannot pursue claims under California's UCL, FAL, or CLRA based on statements appearing on its website (www.intensex.com)—namely, statements regarding Asian Ginseng and Tribulus Terrestris. Def.'s Mot. for Summ. J. 5:3-24, ECF No. 63-1 ("Def.'s Mot."). Notably, Defendant seeks to preclude Plaintiff from basing his claims ("regardless of the theory advanced") on the website's most egregious statements—that Asian Ginseng is used for "frigidity and impotence", and that Tribulus Terrestris is used for "the treatment of sexual dysfunction" and "may help impotence in men and diminished libido in both sexes." Richards Decl. ¶¶ 2-3, Exs. 1 & 2 (showing that Asian Ginseng and Tribulus Terrestiris are advertised on the Product's label and website, beneath the phrase "Proprietary [Sexual] Energy Blend"); ECF 63-9 at ¶ 3 (Defendant, admitting that Pharmacare intended the Product be used to "intensify" a person's "sexual energy"); Richards Decl. ¶ 2, Ex. 1 (Product packaging, containing

express and implied claims about enhancing one's sexual energy, performance/endurance, and intensity of enjoyment of sex after consuming the pill).

Specifically, Defendant argues that claims based on the website's statements fail due to a lack of individual reliance, and that actual reliance is a necessary element of any UCL, FAL, and/or CLRA claim. At the outset, Defendant's reliance argument seems to resemble more of a premature motion *in limine* seeking to exclude any reference to statements made on the website. Indeed, Defendant knows that its website makes unlawful aphrodisiac claims, and thus now seeks to distance itself from such statements, which is likely the reason that website is no longer operational. Richards Decl. ¶ 3; ECF 63-9 ¶ 5. Nevertheless, it matters not whether Plaintiff's claims are based on the website's statements, as his UCL, FAL, and CLRA claims will survive because he actually relied on statements made on IntenseX's packaging. ECF 63-4 ("Sandoval Dep.") at 39:10-16, 40:11-13, 41:14-19, 42:3-43:16, 44:6-11, 49:12-20, 65:7-11, 85:20-23, 115:4-15. Further, as discussed in detail below, under California law the website claims also comprise the Product's labeling. In any case, reference to statements made on Defendant's website is permissible for a number of reasons.

"[A]ll relevant evidence is admissible." Fed. R. Evid. 402. Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action. Fed. R. Evid. 401. Here, evidence of Defendant's website statements is relevant to Plaintiff's case, and thus admissible, because such statements are necessary to prove or corroborate facts of consequence—namely, that IntenseX is unlawfully advertised and misbranded as an over-the-counter ("OTC") aphrodisiac, Defendant's intended use of the Product, and that Defendant's advertising leads reasonable consumers (including Plaintiff) to believe that IntenseX is an effective OTC aphrodisiac. As this Court already determined, claims under the UCL, FAL, and CLRA are governed by the "reasonable consumer" test. *See* Order

4

Denying Def.'s Mot. to Dismiss 12:15-17, ECF No. 17 ("MTD Order") (citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)). The "reasonable consumer" test focuses on whether "members of the public are likely to be deceived." *Williams*, 552 F.3d at 938 (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)). And, there currently exists a genuine dispute of material fact as to whether Defendant's advertising leads a reasonable consumer to believe IntenseX is marketed as an aphrodisiac, as well as the intended use of the Product and Defendant's state of mind in making such claims. The regulatory classification of a product under the FDCA is determined by its intended use, as evidenced by, *inter alia*, its labeling and advertising, the circumstances of its marketing, sale and use, and the manufacturer's knowledge that a product is being used for a purpose for which it is neither labeled nor advertised. 21 C.F.R. § 201.128.

Although Defendant in a self-serving affidavit (since no expert report was filed with Defendant's Motion) contends IntenseX is merely a "dietary supplement", Plaintiff's expert, Dr. George E. Belch ("Dr. Belch"), disagrees, concluding:

> Based on a careful review of the design of the IntenseX product package and the information it contains, it is my opinion that consumers would clearly perceive this to be a sexual performance enhancement product. While there is also information on the package that describes IntenseX as a Dietary Supplement, the wording and claims discussed above are designed to position it as a sexual performance enhancement product rather than a dietary supplement. Claims made on the IntenseX package such as "intensify your endurance, stamina and sexual performance," and "Achieve peak performance to maximize the experience when you want it most" have no relation to dietary or nutritional supplements. Even the instructions under the Recommend Use section at the top of the Side 2 panel state that recommended use is one to two tablets 30-60 minutes **before the benefit is desired** which may convey to the consumer that a temporary sexual performance benefit would be realized soon after using IntenseX. It is my opinion that consumers are more likely to perceive IntenseX as a sexual performance enhancement product rather than a dietary supplement. Moreover, the claims made for IntenseX are material and likely to influence the purchase behavior of consumers who are in the market for a sexual performance enhancement product.

Richards Decl., ¶ 4 Ex., 3 (Dr. Belch June 29, 2016 Rebuttal to Expert Report of Mark Keegan ["Belch Rebuttal Report"]) 7 (emphasis added). Dr. Belch's findings are directly in line with Plaintiff's belief as to the Product's intended purpose, making Sandoval's interpretation of the Product's packaging that of an ordinary consumer. *Id.*; Sandoval Dep. 49:2-11, 59:3-9, 68:5-8, 68:25-69:4, 70:20-71:4, 74:6-11. Statements and images published on Defendant's website (i.e., "IntenseX was formulated to rev up your sex drive and enhance stamina, endurance, and most importantly, heighten and complete your sexual experience") only solidify this conclusion. Richards Decl. ¶ 3, Ex. 2. Moreover, the website's claims that Asian Ginseng is used for consumers who suffer from "frigidity and impotence" (*Id.*) matches Plaintiff's testimony that he believed IntenseX to be an aphrodisiac because, *inter alia*, the Product contains Ginseng (as stated on the IntenseX packaging that he relied on), which Sandoval understands is typically used in other sexual enhancement products such as "Extenze." Sandoval Dep. 50:3-51:18.

Furthermore, there is a genuine dispute as to whether Plaintiff actually viewed and/or relied on Defendant's website representations. Plaintiff testified that he visited www.intensex.com more than once (after his first purchase) and read articles and reviews thereon. *Id.* 86:9-87:9, 92:13-15, 115:7-11. Although Defendant claims the IntenseX website has no "reviews" page (Def.'s Mot. 5:13-14), that website seems to have been taken down by Defendant, and thus its claim cannot be corroborated. ECF 63-9 ¶5; Richards Decl. ¶ 3. As such, genuine disputes of material fact exist that would not warrant summary judgment as to Defendant's website claims. And, regardless of whether Plaintiff's claims are based on statements appearing on the IntenseX website, such website statements are nonetheless admissible relevant evidence, and this Court should not sanction Defendant's attempt to withhold from the trier of fact its most egregious aphrodisiac claims while simultaneously claiming to have complied with all consumer protection and advertising laws.

6

### 2. Plaintiff is Not Preempted from Basing His Claims on the Theory that Defendant Makes Impermissible Disease Claims

Defendant contends that "to the extent that Sandoval claims that PharmaCare violated the UCL, FAL, and CLRA by making impermissible disease claims on the IntenseX label, Sandoval's claims fail" and that "[t]his Court already ruled that Sandoval's theory that IntenseX's label makes impermissible disease claims is expressly preempted." Def.'s Mot. 6:1-17. However, on September 30, 2015, the Court actually *denied* Defendant's Motion to Dismiss, holding that "[m]any of the issues raised are better suited for summary judgment." MTD Order 19:1-9. And, although the Court discussed preemption pertaining to disease claims on the Product's labeling, the Court noted that "Plaintiff also identifies statements on the IntenseX website that are disease claims" including the claim about Tribulus Terrestris which "implies treatment of impotence, a disease." *Id*. 8:18-21; *see also* Richards Decl. ¶ 3, Ex. 2. The Court also stated that Plaintiff asserts that those claims violate California's Sherman Law and the UCL's unlawful prong, and that claims under the Sherman law are *not* expressly preempted. *Id*. 8:18-9:2. *See Paduano v. Am. Honda Motor Co. Inc*., 169 Cal. App. 4th 1453, 1470-74 (2009) (finding plaintiff had no UCL claim based on miles-per-gallon claims consistent with preemptive federal law, but denying summary judgment because plaintiff also challenged other advertising statements outside the scope of preemption). Here, Plaintiff alleges the Product violates the law because no aphrodisiac may be sold without an approved new drug application, which the Court already ruled is not preempted (MTD Order 9:3-12), and Defendant filed no evidence disproving this theory. The website tends to make true these unlawful claims because they show Defendant's intended use of the Product.

Under the Federal Food, Drug, and Cosmetic Act ("FDCA"), "[t]he term 'labeling' means all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article." 21 U.S.C. § 321(m). As

such, statements not actually printed on a label itself, but which appear anywhere and "supplement or explain the product," even if not included with the label physically or by time, constitute labeling. *Kordel v. U.S.*, 335 U.S. 345, 349–50 (1950). *See also U.S. v. Harkonen*, No. C 08–0164 MHP, 2009 WL 1578712, at *11 (N.D. Cal. June 4, 2009) ("[L]abeling under the FDCA is construed expansively, such that it may encompass nearly every form of promotional activity, including package inserts, pamphlets, mailing pieces, fax bulletins, reprints of press releases, and all other literature that supplements, explains, or is otherwise textually related to the product."). Here, the statements made on Defendant's website constitute labeling because those statements supplement or explain the Product's ingredients, and textually expand on the intended use of the Product. *See id.* IntenseX's label identifies the ingredients that comprise its "blend of potent herbal extracts" and the website explains the intended use for each of IntenseX's ingredients.[1] Richards Decl., Exs. 1-2. IntenseX's packaging even directs users who have questions or comments to "visit us at www.intensex.com"—a website which clearly illustrates the Product's intended use as an aphrodisiac. Richards Decl. ¶ 3, Ex. 2. Where a label refers a consumer to a specific website for information about a claim in question, the website can be considered to be "accompanying" the article as "labeling." *Samet v. Procter & Gamble Co.*, No. 5:12-CV-01891 PSG, 2013 WL 3124647, at *9 (N.D. Cal. June 18, 2013).

---

[1] For instance, concerning the ingredient muira puama, the website states "in addition to being used as an **aphrodisiac**, this Amazonian herb boosts and prolongs performance, **enhances virility** [sexual drive] and **improves overall health**;" and that "[r]ecent studies have validated its safety and effectiveness in **improving libido and sexual function** in some patients." The website identifies catuaba bark as "the most famous of all the Brazilian **aphrodisiac** plants." Concerning tribulus terrestris, the website claims that "the most common use for this plant is for the **treatment of sexual dysfunction**" and that "[e]mpirical evidence suggests that tribulus may **help impotence in men and diminished libido in both sexes**." Finally, the website associates ginseng as a remedy when "adrenal and **sexual energy** are low" used for consumers who suffer from "**frigidity and impotence**." Richards Decl. ¶ 3, Ex. 2.

Any product, even a food, can be considered an unapproved drug; what matters here is Defendant's intended use for the Product. 21 C.F.R. § 201.128 (the regulatory classification of a product under the FDCA is determined by its intended use, as evidenced by, *inter alia*, its labeling and advertising, the circumstances of its marketing, sale and use, and the manufacturer's knowledge that a product is being used for a purpose for which it is neither labeled nor advertised); *see also* http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/ucm162943.htm (warning Cheerios that because it made disease claims on its cereal, it was an unapproved new drug); ECF 59 at 2:4 to 4:5. At a minimum, there exists a genuine issue of material fact as to whether the website's statements constitute labeling, and Defendant has not provided any argument or evidence that it does not. As such, summary judgment on this issue is inappropriate.

Finally, reliance is not needed for a UCL unlawful claim or a CLRA claim based on unlawful behavior because illegalness is considered material. *In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 159-160 (Ct. App. 2010). In addition, under *In re Steroid Hormone Product Cases*, where unlawful behavior is proven, not only is reliance not needed, but injury is presumed. *Id.* at 154-157 (holding that a plaintiff "does not put valuation at issue when he alleges that he bought a product that was illegal to sell or possess"). This decision of the California Court of Appeal is binding on this Court as it is a state court of appeal interpreting state law.

### 3. Defendant's Representations do not Constitute Non-Actionable Puffery

Without citation to a single expert or any evidence, Defendant argues that "Plaintiff's UCL, FAL, and CLRA claims fail because they rely on non-actionable puffery. Def.'s Mot. 6:18-7:25. Not so. "'Puffing' has been described by most courts as involving outrageous generalized statements, not making specific claims, that are so exaggerated as to preclude reliance by consumers." *Cook, Perkiss & Liehe, Inc. v. N. California Collection*

9

*Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990). In other words, puffery is "exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely." *Dorsey v. Rockhard Labs.*, LLC, 2014 WL 4678969, at *5 (C.D. Cal. Sept. 19, 2014) (quoting *Southland Sod Farms v. Stover Seed, Co.*, 108 F.3d 1134, 1145 (9th Cir. 2007)). Puffery "refers generally to an expression of opinion not made as a representation of fact." *Fed. Trade Comm'n v. U.S. Sales Corp.*, 785 F. Supp. 737, 746 (N.D. Ill. 1992). Thus, a statement is mere puffery only where it is "extremely unlikely to induce consumer reliance." *Newcal Indus. v. Ikon Office Solutions*, 513 F.3d 1038, 1053 (9th Cir. 2008); accord *Autodesk, Inc. v. Dassault Systems Solidworks Corp.*, 685 F. Supp. 2d 1001, 1017 (N.D. Cal. 2009). Importantly, "[t]he Court must consider the packaging as a whole in evaluating whether the advertisement can be read as implying specific facts about the product." *Dorsey*, 2014 WL 4678969, at *5. Where a series of statements "contributes to the deceptive context of the packaging as a whole" the court should not dismiss the statements as puffery. *See Williams*, 552 F.3d at 939 n.3.

In *Dorsey*, another aphrodisiac consumer protection case, the court found that certain "statements, taken as a whole and in context, do not constitute puffery, but rather make specific claims regarding the benefits of taking" the challenged product. *Dorsey*, 2014 WL 4678969, at *6. That is the case here also. The net impression of Defendant's advertising and labeling statements is that IntenseX and its ingredients are effective in providing aphrodisiac benefits by utilizing a "fast acting formula [that] quickly dissolves in the body releasing an energy packed blend of potent herbal extracts," which is "Laboratory Quality Tested" using only the "highest manufacturing standards," thereby providing purchasers "Sexual Power and Performance," as well as "endurance, stamina, and sexual performance." Richards Decl. ¶ 2, Ex. 1. Moreover, Defendant touts the benefits of the Product's ingredients on its website as "prolonging performance, enhancing virility [sexual drive] and improving overall health," "improving libido and sexual function" "treat[ing] []

10

sexual dysfunction" and "help[ing] impotence in men and diminished libido in both sexes." Richards Decl. ¶ 3, Ex. 2.

In an attempt to persuade this Court that its aphrodisiac representations are mere puffery, Defendant contends that IntenseX's packaging only led Plaintiff "to believe that he would have an increased libido, have a 'rock-hard erection' and be able to 'cum[] very easily." Def.'s Mot. 7:11-16. However, not only is this a reasonable interpretation of the package's express and implied claims, but Defendant fails entirely to address other claims on the Product's packaging, as well as the claims made on the IntenseX website (which constitutes labeling). *See* fn. 1 *supra*; Richards Decl. ¶¶ 2-3, Exs. 1-2. In any case, the cherry-picked deposition statements Defendant references (without citation) misinterprets and oversimplifies his testimony.

Specifically, Plaintiff testified that he believed the Product's name (IntenseX) implied he was "going to have intense sex" by taking it – this is a reasonable interpretation of the label's express and implied claims. Sandoval Dep. 68:25-69:4; compare Belch Rebuttal Report 6 ("the IntenseX brand name is a blended word combining two emotionally charged words, **Intense and Sex**, which have cultural meaning among consumers. Intense sex is a term often used in reference to a very strong, passionate and/or arousing sexual experience.") (emphasis in original). With respect to the phrase "IntenseX is designed to intensify your endurance, stamina, and sexual performance", Plaintiff testified that he interpreted this to mean the Product would increase his libido and erection. Sandoval Dep. 70:15-71:4; compare Belch Rebuttal Report 6 ("These words are very clear and direct regarding the benefits that would be received by taking IntenseX. Endurance and stamina are words that are often used in relation to the duration of sexual intercourse and the fact that they are used here in the same sentence as sexual performance makes the benefit claim very explicit."). In fact, Defendant's own website states that the Product's ingredients (Muira Puma and Tribulus Terrestris) improve diminished libido and sexual function.

11

Richards Decl. ¶ 3, Ex. 2.

Plaintiff further testified that he believed the phrase "Achieve peak performance to maximize the experience when you want it most", meant the Product maximize his erection and climax/ejaculation, which is what the package expressly and impliedly claims. Sandoval Dep. 74:6-11; compare Belch Rebuttal Report 6, 12 (

> "Since this statement appears in the same paragraph of the sexual performance claim, it is clear that it is there in reference to peak sexual performance and maximizing a sexual experience. . . . Sixty percent of the respondents believed that the 'Achieve peak performance to maximize the experience when you want it most' and 'IntenseX logo' statements are communicating specific benefits. These results show that a majority of the respondents do perceive the sexual performance related statements are communicating specific benefits.").

Plaintiff also testified that he thought the phrase "Fast Acting!" meant that IntenseX would work within 5 to 30 minutes of ingestion. Sandoval Dep. 68:5-8; compare Belch Rebuttal Report 6 ("The words 'Fast Acting!' that appear above the IntenseX brand name also convey a sexually related efficacy claim which is that the sexual power and performance benefits will occur in a short time period after taking the product, which is important benefit for a sexual performance enhancement product."). Plaintiff further believed that the phrase implied IntenseX would work before he got home, after taking the Product outside the store he purchased it at approximately 30 minutes away. Sandoval Dep. 42:8-18; compare Richards Decl. 3, Ex. 2 (IntenseX website) ("IntenseX is the only fast-acting formula that works within minutes to give you the powerful, sexual energy you need to make a 'long lasting' impression."; "**Works so fast you may not make it home**.") (emphasis added). Defendant filed zero evidence in support of its Motion that Sandoval's understanding of the Product was not exactly what Defendant intended him to believe.

In sum, looking to the Product's labeling as a whole, Plaintiff reasonably believed IntenseX to be an aphrodisiac. Sandoval Dep. 49:2-11, 50:1-51:3; *compare* Belch Rebuttal

Report ¶ 4 ("These words and statements are on the package for a reason which is to communicate to consumers reviewing the package that IntenseX is a product that can help enhance sexual performance."). Accordingly, Defendant's assertions, when considered in the context of IntenseX's packaging and advertising as a whole—"are not vague, exaggerated, or subjective, [but] are precisely the type of representations upon which consumers might rely." *See Swiss Am. Trading Corp. v. Regal Assets, LLC*, 2015 WL 631569, at *2 (C.D. Cal. Feb. 13, 2015). Because such representations are not merely expressions of opinion but rather representations of fact, and cannot be said to be *extremely unlikely* to induce consumer reliance, Defendant's representations are not mere non-actionable puffery.

**B. Plaintiff is Entitled to the Remedies Sought Under His UCL and FAL Claims**

**1. Plaintiff Has a Viable Restitution Claim**

Citing *Korea Supply v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144-45 (2003), Defendant first argues that restitution under the UCL and FAL is limited to the return of property or funds in which the plaintiff has an ownership interest, and that Plaintiff seeks a refund of monies to which he has no ownership interest rather than the money he spent on the Product individually. Def.'s Mot. 8:6-24. However, four years after the *Korea Supply* decision was handed down, the California Court of Appeal maintained that *Korea Supply* "concluded that 'restitutionary disgorgement' is available under the UCL." *Juarez v. Arcadia Fin., Ltd.*, 152 Cal. App. 4th 889, 914-15 (2007). In support of this conclusion, the court quoted *Korea Supply*'s statements that restitution under the UCL "is not limited only to the return of money or property that was once in the possession of [the plaintiff]," but "is broad enough to allow a plaintiff to recover money or property in which he or she has a vested interest." *Id.* at 915 (quoting *Korea Supply*, 29 Cal. 4th at 1149). It further reasoned that "plaintiffs arguably have an ownership interest in any profits [Defendant]

13

may have gained through interest or earnings on the plaintiffs' money that [Defendant] wrongfully held." *Id*. The court also distinguished several other cases holding that there is no right to restitutionary disgorgement on the ground that plaintiffs in those cases "had not lost to the defendant any vested interest in money or property." *Id*. at 917. Here, Plaintiff actually lost money—$9.99 per purchase. Sandoval Dep. 40:14-17, 103:14-19. In essence, the *Juarez* court's view was that, provided there is a reasonable nexus between profits and what was taken by the defendant, equity allows the plaintiff to recover not only what was taken, but also any profits generated from what was taken.

Like *Juarez*, Plaintiff here seeks restitution of monies alleged to have wrongfully collected from Plaintiff, as well as any profits and interest Defendant may have earned on these monies. In any case, summary judgment is inappropriate here because "it is not clear that the plaintiff[] will *not* be able to establish that the disgorgement of certain profits made as a result of its unlawful practice falls under the rubric of 'restitutionary disgorgement.'" *Juarez*, 152 Cal. App. 4th at 917 n.16.

Even if this Court were to agree with Defendant's unsupported position, Plaintiff's UCL and FAL claims would still survive because the Court could simply fashion a restitution award as it sees fit. As with the substantive provisions of the UCL, the remedial provisions have been liberally construed to give courts broad powers to fashion creative awards of injunctive or restitutionary relief. *See Fletcher v. Sec. Pac. Nat'l Bank*, 23 Cal. 3d 442, 449 (1979) (noting that principles of equity, combined with express statutory language, arms "the trial court with the cleansing power to order restitution to effect complete justice."); *Barquis v. Merchants Collection Assn.*, 7 Cal. 3d 94, 111 (1972) (explaining that the Legislature's intent was "to permit tribunals to enjoin on-going wrongful business conduct in whatever context such activity might occur.").

Second, Defendant argues that Plaintiff cannot seek restitution because he did not purchase anything directly from PharmaCare. Def.'s Mot. 8:25-9:2. Defendant's argument,

14

however, misses the mark. Indeed, the California Court of Appeal has specifically held that a remedy of restitution under the UCL is *not* limited to plaintiffs making direct payments to a defendant, and a buyer of products from a retailer is entitled to pursue recovery of restitution from a manufacturer for the manufacturer's alleged deceptive marketing. *Shersher v. Super. Ct.*, 154 Cal. App. 4th 1491 (2007); *id.* at 1500 ("[T]he plaintiff in a UCL action may obtain restitution from a defendant with whom the plaintiff did not deal directly.") (citing *Hirsch v. Bank of Am.*, 107 Cal. App. 4th 708 (2003)).[2]

Third, Defendant argues that Plaintiff's restitution claim fails to account for the purported value of the caffeine effect he received from the Product, but Defendant lacks its own an expert on damages entirely. Def.'s Mot. 9:3-14. Defendant also filed no evidence to support that IntenseX is marketed for a caffeine high or that any reasonable consumer would so interpret the Product's labeling. *See id.* In addition, Plaintiff never purchased IntenseX to obtain a caffeine benefit, nor did Plaintiff rely on the fact that caffeine was present in the Product when choosing to purchase it. In fact, Plaintiff has *never* purchased caffeine pills before, and would not need to because he already drinks coffee. Sandoval Dep. 80:2-3. And, IntenseX is clearly not marketed to consumers seeking caffeine. Defendant's position that Plaintiff must deduct the value of caffeine benefits obtained from

---

[2] *Accord People v. Sarpas*, 225 Cal. App. 4th 1539, 1561 (2014); *Cty. of San Bernardino v. Walsh*, 158 Cal. App. 4th 533, 542 (2007); *County of Solano v. Vallejo Redevelopment Agency*, 75 Cal. App. 4th 1262, 1278 (1999); *Price v. Kawasaki Motors Corp., USA*, No. SACV 10-01074-JVS, 2011 WL 10948588, at *5 (C.D. Cal. Jan. 24, 2011); *Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066, 1079 (E.D. Cal. 2010); *VP Racing Fuels, Inc. v. Gen. Petroleum Corp.*, No. 2:09CV02067-MCE-GGH, 2010 WL 1611398, at *3 (E.D. Cal. Apr. 20, 2010); *Tompkins v. Basic Research LL*, No. CIV. S08244LKKDAD, 2008 WL 1808316, at *4 n.7 (E.D. Cal. Apr. 22, 2008); *Arroyo v. TP-Link USA Corp.*, No. 5:14-CV-04999-EJD, 2015 WL 5698752, at *5 (N.D. Cal. Sept. 29, 2015); *Fields v. Wise Media, LLC*, No. C 12-05160 WHA, 2013 WL 3187414, at *6 (N.D. Cal. June 21, 2013); *ZL Techs., Inc. v. Gartner, Inc.*, No. CV 09-02393 JF (RS), 2009 WL 3706821, at *10 (N.D. Cal. Nov. 4, 2009).

15

the Product, if accepted, would only lead to a slippery slope. For example, under Defendant's position, if a consumer was misled into purchasing an expensive bottle of exotic vodka which turned out to be nothing more than water, courts would be forced to require the deduction of the value of water since all consumers drink water. This begs the question, what would be the value of water? Would it be the value of tap water or a $20 bottle of Voss Artisan water? Defendant's unsupported argument, lacking in evidence entirely, is nothing more than an attempt to muddy the waters in order to complicate simple restitutionary calculations.

The single case Defendant cites in support of its position, *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (2009), is inapposite to the case at hand, as the value of the product purchased and the value of a safer similar product there was at least comparable (both pain relieving drugs). Conversely, in the instant matter, the IntenseX Product advertised for sexual enhancement is in no way comparable to coffee or caffeine, nor was that the Product's intended use. Even more fatal to Defendant's position, "*Vioxx does not purport to set forth the exclusive measure of restitution potentially available in a UCL case.*" *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 792 (2015); *accord Johns v. Bayer Corp.*, No. 09-CV-1935-AJB DHB, 2012 WL 1520030, at *5 (S.D. Cal. Apr. 30, 2012). Rather, "[a] full refund may be available in a UCL case when the plaintiffs prove the product had no value to them." *In re Tobacco Cases II*, 240 Cal. App. 4th at 795–96. And, "courts have approved a full refund as a measure of restitution in those cases where the consumers alleged that the challenged products provided absolutely no value." *Chowning v. Kohl's Dep't Stores, Inc.*, No. CV1508673RGKSPX, 2016 WL 1072129, at *7 (C.D. Cal. Mar. 15, 2016). *See Allen v. Similasan Corp.*, 306 F.R.D. 635, 649 (S.D. Cal. 2015) ("Here, restitution is the equivalent of out-of-pocket expenses because, under Plaintiffs' theory, the purchased Products are ineffective and therefore worthless."); *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 671 (C.D. Cal. 2014) ("Plaintiffs' contention that they are entitled to full

16

restitution is linked to their theory that the products they paid for are worthless because they did not provide any of the advertised benefits and had no ancillary value."); *Ortega v. Natural Balance, Inc*., 300 F.R.D. 422, 430 (C.D. Cal. 2014) (court certified a class action where the plaintiffs sought a full refund for a dietary supplement on the ground it falsely advertised aphrodisiac qualities and had no value apart from that claim).

Here, Plaintiff's expert concluded that IntenseX is essentially ineffective. *See* Richards Decl., ¶ 5, Ex. 4 (David Rowland June 29, 2016 Rebuttal to Expert Report of Eric Gershwin ("Rowland Rebuttal Report")) 12 ("[N]one of the ingredients in IntenseX have any authoritative studies showing aphrodisiac effects, nor is there a significant accumulated body of scientific literature supporting their use for any pro-sexual effects, and most if not all of the IntenseX ingredients have been demonstrated to have no such effects."); *id*. at 8 ("Even for the small number of studies that suggest a positive effect of particular ingredients in IntenseX, they do not provide support for the claims on the IntenseX label."); Richards Decl., ¶ 6, Ex. 5 (David L. Rowland's May 27, 2016 Expert Review of the Manufacturer's Claims for IntenseX ("Rowland Expert Report")) ¶¶ 9-24. Not only did Defendant file zero evidence in support of its Motion on effectiveness or caffeine value (and it cannot do so for the first time in a Reply [CivLRs 7.1(e)(1), (f)(2)]), but Plaintiff has moved to strike Defendant's purported science and FDA expert on *Daubert* grounds. ECF 62. Plaintiff also testified that IntenseX did not work for him, which is circumstantial evidence that bolsters Plaintiff's expert evidence. Sandoval Dep. 22:22-23:14, 48:17-49:1, 55:11-13, 62:2-5, 71:13-72:6, 73:7-9, 75:5-7, 89:14-16, 90:20-22. Because IntenseX has no value at all, a full refund is the appropriate measure of restitution.

### *2. Disgorgement is an Available Remedy*

Defendant argues that disgorgement is not an available remedy under the UCL or FAL. Def.'s Mot. 9:15-20. As discussed above, however, provided there is a reasonable

nexus between profits and what was taken by the defendant, equity allows the plaintiff to recover not only what was taken, but also any profits generated from what was taken. *See Juarez*, 152 Cal. App. 4th at 914-17. In any event, Plaintiff is still entitled to damages under the CLRA, which is the same calculation as restitutionary disgorgement (price paid).

### 3. *Plaintiff Has Standing to Seek Injunctive Relief*

Defendant claims Plaintiff lacks standing to pursue injunctive relief because it is unlikely he will purchase the Product again in the future. Def.'s Mot. 9:21-10:17. Yet, Plaintiff never alleged he would not purchase the Product again in future if it were advertised truthfully or actually provided the advertised benefits. More importantly, this Court already held that "Plaintiff has standing to pursue his claims" and that "Defendant's request to shave off one remedy does not require dismissal of his claims." MTD Order 17:26-28. *See also Bohn v. Pharmavite, LLC*, No. CV 11-10430-GHK CWX, 2012 WL 8898669, at *4 (C.D. Cal. May 16, 2012) ("[W]e decline to consider Defendant's argument, which at best will only result in striking specific forms of relief on a piece-meal basis.").

In any case, "were the Court to accept the suggestion that plaintiffs' mere recognition of the alleged deception operates to defeat standing for an injunction, then injunctive relief would never be available in false advertising cases, a wholly unrealistic result." *Ries v. Ariz. Bevs. U.S. LLC, Hornell Brewing Co*., 287 F.R.D. 523, 533 (N.D. Cal. 2012) (citing *Henderson v. Gruma Corp*., No. CV 10-04173 AHM AJWX, 2011 WL 1362188, at *7 (C.D. Cal. Apr. 11, 2011) ("If the Court were to construe Article III standing for FAL and UCL claims as narrowly as the Defendant advocates, federal courts would be precluded from enjoining false advertising under California consumer protection laws because a plaintiff who had been injured would always be deemed to avoid the cause of the injury thereafter ('once bitten, twice shy') and would never have Article III standing.")).

While Plaintiffs may not purchase the same . . . products as they purchased during the class period, because they are now aware of the true [nature] of the

> products, to prevent them from bringing suit . . . would surely thwart the
> objective of California's consumer protection laws. That objective is "to
> protect both consumers and competitors by promoting fair competition in
> commercial markets for goods and services.

*Henderson*, 2011 WL 1362188, at *8 (quoting *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 344 (2011) (emphasis in original)); *see also Koehler v. Litehouse, Inc.*, No. CV 12-04055 SI, 2012 WL 6217635, at *6 (N.D. Cal. Dec. 13, 2012) ("The Court agrees with *Henderson*. To do otherwise would eviscerate the intent of the California legislature in creating consumer protection statutes because it would effectively bar any consumer who avoids the offending product from seeking injunctive relief."); *Larsen v. Trader Joe's Co.*, No. C 11-05188 SI, 2012 WL 5458396, at *4 (N.D. Cal. June 14, 2012) (same).

> Plaintiffs request to be relieved from false advertising by defendants in the
> future, and the fact that they discovered the supposed deception some years
> ago does not render the advertising any more truthful. Should plaintiffs
> encounter the . . . [challenged claims] at the . . . store today, they could not
> rely on th[e] representation[s] with any confidence. This is the harm
> California's consumer protection statutes are designed to redress.

*Ries*, 287 F.R.D. at 533.

Defendant further argues that injunctive relief is unavailable because Defendant purportedly stopped selling IntenseX in November 2015. Def.'s Mot. 10:6-7. However, Defendant never stated that it would stop selling the Product indefinitely. In fact, Defendant could start selling the Product again at any time (whether tomorrow or after this lawsuit concludes), and may even sell the Product through different intermediaries, as there is no court order in effect that would preclude it from doing so. Because there exists a genuine dispute of material facts as to whether Plaintiff would purchase IntenseX in the future, as well as whether the Product will be sold in the future, summary judgment is not warranted regarding Plaintiff's pursuit of injunctive relief.

**C.    Material Facts Are in Dispute on Whether Defendant Breached an Express Warranty**

Under the California Commercial Code, express warranties may be created by "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Cal. Com. Code § 2313(1)(a). Alternatively, "[a]ny *description* of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Cal. Com. Code § 2313(1)(b) (emphasis added).

Defendant focuses on Section 2313(1)(a), while largely ignoring the "description" language found at Section 2313(1)(b). Regardless, both sections speak of the "basis of the bargain" and the statute "creates a presumption that the seller's affirmations go to the basis of the bargain." *Allen v. Hyland's*, 300 F.R.D. at 669. Indeed, "Any affirmation, once made, is part of the agreement unless there is 'clear affirmative proof' that the affirmation has been taken out of the agreement." *See Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1229 (2010).

**1.    *Defendant Fails to Show by "Clear Affirmative Proof" that its Affirmations of Fact, Promises, and Descriptions of IntenseX Do Not Create Express Warranties***

Defendant argues that Plaintiff's warranty claims fail because there are not "any affirmations of fact or promises on the product label." Def.'s Mot. 11:12-13. At the outset, this Court already ruled that Plaintiff "has adequately pleaded the elements of a claim for breach of express warranty" because "[h]e identifies the specific statements made on the IntenseX packaging that promised increased sexual power and performance; he alleges that he and putative class members reasonably relied on those statements; and he alleges that the product did not and cannot provide the promised effects." MTD Order 13:22-26.

Similarly, with respect to Plaintiff's implied warranty claim, the Court also ruled that "Defendant has not shown that Plaintiff's theory fails." *Id*. 14:9-13. Defendant filed no evidence to show otherwise. Significantly, Defendant does not argue that that there are no "*descriptions*" of the product on the label. *See* Cal. Com. Code § 2313(1)(b) ("Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description."); accord *Viggiano v. Hansen Natural Corp*., 944 F. Supp. 2d 877, 893 (C.D. Cal. 2013) ("A description of the goods at issue can create an express warranty so long as it was part of the basis of the bargain between the parties.").

The IntenseX label creates several express written warranties through affirmations of fact, promises, and descriptions. Such express warranties include: (1) IntenseX (phonetically identical to "intense sex"); (2) "Fast Acting!"; (3) "Sexual Power and Performance"; (4) "IntenseX is designed to intensify your endurance, stamina, and sexual performance."; (5) "This fast acting formula quickly dissolves in the body releasing an energy packed blend of potent herbal extracts."; (6) "Achieve peak performance to maximize the experience when you want it most."; (7) "Proprietary Stamina Blend"; (8) "Produced using the highest manufacturing standards."; (9) "Laboratory Quality Tested"; and (10) 100% Satisfaction Guaranteed". Richards Decl. ¶ 2, Ex. 1. Defendant has filed zero evidence that these statements did not form the basis of the bargain between Sandoval and itself. Thus, Defendant failed to meets its summary judgment burden.

Moreover, there is a presumption under California law that these "affirmations of fact," "promises," and/or "descriptions" of IntenseX have been "w[oven] ... into the fabric of the agreement," and "any fact which is to take such affirmations, once made, out of the agreement requires clear affirmative proof." *See* Cal. Com. Code § 2313 cmt. para. 3; *see also Keith v. Buchanan*, 173 Cal. App. 3d 13, 23 (1985) ("A warranty statement made by a seller is presumptively part of the basis of the bargain, and the burden is on the seller to

prove that the resulting bargain does not rest at all on the representation.").

Defendant has failed to carry its burden of showing by "clear affirmative proof" that the labeling statements are not part of the basis of the bargain. *See* Belch Rebuttal Report ¶ 4 ("A reasonable consumer who examines the IntenseX product packaging and the information it contains would interpret specific words and representations made on the package and would form the beliefs these words and representations are intended to convey regarding the benefits of using the product."). The only argument offered is that the Product packaging "merely includes the word 'Sexual Power and Performance'" and not the word "increase." Def.'s Mot. 11:20-12:3. But Defendant **admits** its intent in selling the Product was to "intensify" "sexual energy." ECF 63-9 at ¶ 3. Intensify means to grow, enhance, to increase. And, with respect to the "Sexual Power and Performance" claim, it appears rather obvious that the statement is *describing* the benefits that IntenseX will provide to users, as corroborated by Plaintiff's expert:

> Examination of the IntenseX packaging shows that it clearly contains words and statements that are designed to convey the impression that this product can be used to improve sexual performance. These words and statements are on the package for a reason which is to communicate to consumers reviewing the package that IntenseX is a product that can help enhance sexual performance. . . . The fact that the IntenseX brand name has the words Sexual Power & Performance in a prominent position directly under it reinforces the communication of a sexual performance benefit one might receive from using the product.

Belch Rebuttal Report 5-6. *See also Dorsey*, 2014 WL 4678969, at *6 (holding that claims like "Sexual Performance Enhancer for Men" on the label of an aphrodisiac product "make specific claims regarding the benefits" provided by the product.). Further, the Product's name "IntenseX" is an affirmation that the Product will result in intense sex. Belch Rebuttal Report 6 ("the IntenseX brand name is a blended word combining two emotionally charged words, **Intense and Sex**, which have cultural meaning among consumers. Intense sex is a

term often used in reference to a very strong, passionate and/or arousing sexual experience."). Defendant does not even address the other labeling representations, and fails entirely to prove there are no genuine disputes of material facts.

### 2. Defendant's Website Statements Create Express Warranties that Plaintiff Need Not Have Relied On

Defendant argues that statements on Defendant's website cannot form the basis of Plaintiff's breach of warranty claim because he must have relied on said statements since he did not purchase the Product directly from Defendant. Def.'s Mot. 12:7-19 (citing *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 546 (C.D. Cal. 2012) ("[I]n the absence of privity, California law requires a showing that a plaintiff relied on an alleged omission or misrepresentation.")). Fatal to its argument, however, an exception to the privity requirement exists where a consumer relies on manufacturer advertising, which works as a substitute for privity, such as the case here. *Coleman v. Boston Sci. Corp.*, No. 1:10-CV-01968-OWW, 2011 WL 3813173, at *5 (E.D. Cal. Aug. 29, 2011) (observing privity is not required where "the purchaser of a product relied on representations made by the manufacturer in labels or advertising material") (citing *Burr v. Sherwin Williams Co.*, 42 Cal.2d 682, 696 (1954)). Furthermore, another exception to the privity requirement exists "in cases involving foodstuffs, drugs and pesticides." *Windham at Carmel Mountain Ranch Assn. v. Super. Ct.*, 109 Cal. App. 4th 1162, 1169 & n.7 (2003) (citing *Greenman v. Yuba Power Prods., Inc.*, 59 Cal.2d 57, 62–64 (1963)). Dietary supplements (which Defendant alleges IntenseX is) are treated as foods under the FDCA. 21 U.S.C. § 321(f) (specifying that a dietary supplement is a product intended to supplement the diet and consisting, inter alia, of a vitamin, mineral, herb, etc.). Plaintiff, however, contends that the Product is an unapproved drug. Under either scenario, privity is not required here. In any event, summary judgment on this issue is not warranted because there is a genuine dispute as to whether Plaintiff was exposed to the website's statements. Sandoval Dep. Tr. 86:9-

23

87:9 ("I went to IntenseX.com, I typed it into Google, and it brought up . . . ."); *id.* 115:7-11. *See Karim v. Hewlett-Packard Co.*, 311 F.R.D. 568, 575 (2015) ("'Exposure' does not require that the buyers must prove that they actually read the statement; instead, under *Weinstat*, it is sufficient for plaintiff to show that the statement was made available to them.") (citing *Weinstat*, 180 Cal. App. 4th at 1213).

### 3. Plaintiff Was "Actually Exposed" to the Express Warranties on the Product Packaging and also "Actually Relied" on such Statements

Despite Defendant's contention to the contrary, Plaintiff was exposed to, and reasonably relied on, Defendant's express warranties that appeared on the Product's label. *See* Section A(3), *supra*. Again, Defendant fails to address most of the Product's labeling statements. Further, it matters not whether Plaintiff had sexual performance problems, premature ejaculation issues, erectile dysfunction, or diminished libido, as any consumer can purchase Defendant's OTC Product who simply wishes to enhance their sexual experience, performance, and/or enjoyment. Ironically, Defendant seems to take the position that IntenseX is not marketed to treat sexual dysfunction issues, but on the other hand argues Plaintiff must have had such issues in order for his reliance on the Product's advertising to be reasonable. In any case, Defendant has failed to meet its burden in showing through "clear and affirmative proof" that the labeling statements were not a part of the basis of the bargain. Accordingly, summary judgment must be denied.

## D. MATERIAL FACTS ARE IN DISPUTE ON PLAINTIFF'S BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

Defendant's Motion references Plaintiff's implied warranty of merchantability claim, but tries to lump it together with its faulty express warranty arguments. And, Defendant offers no substantive argument regarding its breach of implied warranty of merchantability. Defendant has cited to no materials that "establish the absence or presence of a genuine dispute" and thus cannot prevail on its summary judgment motion with respect

24

to the implied warranty of merchantability. *See* Fed. R. Civ. P. 56(c)(B). "The implied warranty of merchantability 'is breached when the goods do not conform to the promises or affirmations contained on the container or label or are not fit for the ordinary purposes for which the goods are used." *Martinez v. Metabolife Int'l, Inc.*, 113 Cal. App. 4th 181, 189 (2003). Plaintiff has presented sufficient evidence that IntenseX did not, and does not, conform to the "promises or affirmations contained on the container or label" to create a genuine dispute. *See*, *e.g.*, Richards Decl., Exs. 3-5.

## E.  MATERIAL FACTS ARE IN DISPUTE ON PLAINTIFF'S MMWA CLAIMS

Claims brought under the MMWA stand or fall with state law express and implied warranty claims and "this court's disposition of the state law warranty claims determines the disposition of the [MMWA] claims." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008); *see also In re Sony PS3 Other OS Litig.*, 551 Fed. Appx. 916, 920 (2014) (same). Here, Defendant has not filed a scintilla of evidence that IntenseX lives up to its promises; thus Plaintiff's warranty claims stand. In addition, Defendant claims Plaintiff's MMWA claim should be dismissed "[i]n light of the Court's denial of Sandoval's Motion for Class Certification." Mot. 13:10-11. But Plaintiff filed a renewed motion for class certification that is pending before the Court (ECF No. 59). In the interest of judicial economy, that issue should be resolved first because it affects this argument.

## IV.  CONCLUSION

For the foregoing reasons, the Court should, respectfully, deny Defendant's Motion in its entirety.

DATED:  August 15, 2016                    Respectfully Submitted,

                    */s/ William B. Richards, Jr.*
                    **LAW OFFICES OF RONALD A. MARRON**
                    RONALD A. MARRON

SKYE RESENDES
WILLIAM B. RICHARDS, JR.
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

**THE WESTON FIRM**
GREGORY S. WESTON
DAVID ELLIOT
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone: (619) 798-2006
Facsimile: (313) 293-7071


*Counsel for Plaintiff*